IN THE MATTER OF: CHRISTINE TATE D.O.B. 11/2/79

No. 8326DC210

(Filed 6 March 1984)

1. Parent and Child § 1.6— termination of parental rights—sufficiency of evidence

In a proceeding to terminate parental rights, the evidence supported a finding that appellant willfully left the minor child in foster care for two years without showing positive response to the significant efforts of the Department of Social Services to encourage her to strengthen her parental relationship with her child where the evidence showed a gradual abandonment of efforts to improve herself and her situation and to regain custody of her child.

2. Parent and Child § 1.6— termination of parental rights—lack of substantial progress—sufficiency of evidence

There was clear, cogent, and convincing evidence to support a trial court's finding of lack of substantial progress in a proceeding to terminate parental rights where appellant admitted she still had setbacks with her drinking, appellant was still unemployed despite having had three jobs and being able to work, and appellant still lived a nomadic life by changing her address twenty-four times from June 1980 to September 1982.

3. Parent and Child § 1.6— termination of parental rights—finding of failure to pay reasonable portion of foster care—supported by evidence

In a proceeding to terminate parental rights, there was ample evidence to support a finding and conclusion that appellant failed to pay a reasonable portion of the cost of foster care of the minor child where appellant conceded that she paid nothing toward the cost of foster care of her child since April 1981, more than a year before the filing of the petition, the record showed that appellant was able to pay support, and the announcement by the Department of Social Services of its intention to seek a termination of parental rights did not excuse appellant from paying support.

APPEAL by respondent Theresa G. Tate from *Bennett, Judge.* Order signed out of session 26 October 1982 in District Court, MECKLENBURG County. Heard in the Court of Appeals 20 January 1984.

*Tate K. Sterrett for respondent appellant.*

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski and William H. McNair, for petitioner appellee, Mecklenburg County Department of Social Services.*

*Griffin, Gerdes, Mason, Brunson & Wilson, by James L. Mason, Jr., Guardian ad Litem for Christine Tate, appellee.*

BRASWELL, Judge.

The mother of a minor child, Theresa G. Tate, appeals from an order terminating her parental rights pursuant to G.S. 7A-289.32(3) and G.S. 7A-289.32(4). Appellant brings forward seven questions for review, which can be classified into three groups: (1) those relating to the trial court's findings and conclusions under G.S. 7A-289.32(3); (2) those relating to the trial court's findings and conclusions under G.S. 7A-289.32(4); and (3) those relating to the trial court's conclusion that termination of parental rights was in the child's best interests. We find that there was clear, cogent and convincing evidence to support the trial court's findings, which in turn sustain the trial court's conclusions and order terminating appellant's parental rights. We accordingly affirm.

On 3 June 1980, by order of the trial court based upon a finding of dependency, the minor child, Christine Tate, was placed in the custody of the Mecklenburg County Department of Social Services. Thereafter periodic review hearings were held on 6 January 1981, 9 April 1981 and 18 September 1981 to review the appellant's progress towards overcoming her drug and alcohol abuse and mental problems, and towards stabilizing her life.

On 19 July 1982 the Department of Social Services filed a petition to terminate appellant's parental rights. The natural father and legal father had previously surrendered the child for adoption. A hearing upon the petition was held on 27 September 1982. Appellant was not present at this hearing, despite having been given notice and been advised by her attorney of the time of the hearing. Appellant's counsel did attend the hearing. After hearing evidence, the trial court entered an order terminating appellant's parental rights and containing the following pertinent findings of fact and conclusions of law to which appellant has excepted:

2. That Theresa Grose Tate willfully left said child in foster care for more than two years without showing positive response to significant efforts made by the Department of Social Services to encourage said mother to strengthen her parental relationship with her child; that the said mother failed to make and follow through with constructive planning for the future of the child; that while Mrs. Tate made some efforts, at least until about twelve months ago, to get her liv-

ing conditions straightened out so that she might have her child returned to her, to deal with her alcohol problem, and to support her child, the Court believes that in March of 1982, she ceased, without justification, efforts to secure and maintain a home and suitable employment so that she might care for her child. The Court finds that Ms. Tate is in no better condition with respect to providing for her child than she was before the child was removed from her. Additionally, Ms. Tate voluntarily terminated her relationship with Treatment Alternatives to Street Crime (TASC) and with the Randolph Clinic without completing rehabilitative programs designed to help her substance abuse problems.

3. That the mother has had a total of 16 visits since the child came into custody in June, 1980, but the Court does not feel that the seven visits she has made in the past year demonstrate a diligent effort to maintain a relationship with her child.

4. That the said Theresa Grose Tate failed, for a continuous period of more than six months next preceding the filing of this petition, to pay a reasonable portion of the cost of care of said child; that she paid a total of $120.00 since the child was placed in the care of the petitioner and has paid no support since April, 1981; and the Court finds that at least in March of 1982 Ms. Tate was working and quit her job because she did not wish to work on weekends.

5. That the Court concludes that the provision of G.S. 7A-289.32(3) relative to showing response to efforts of the petitioner to encourage the strengthening of the parent/child relationship requires a showing of some results from efforts to eliminate the conditions which lead [sic] to the removal of the child. This Court finds that the mother has not been successful in eliminating the conditions which lead [sic] to the removal of the child and has made only sporadic response to the Department's efforts.

6. That based upon the foregoing, the Court concludes as a matter of law that the petitioner has established grounds under G.S. 7A-289.32(3) and under G.S. 7A-289.32(4); and the Court further concludes that the best interests of this par-

ticular child require that the parental rights of the mother be terminated.

The text of the two grounds under G.S. 7A-289.32 which the judge found germane in his conclusions of law read (as of 26 October 1982) as follows:

(3) The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect or without showing positive response within two years to the diligent efforts of a county department of social services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

(4) The child has been placed in the custody of a county department of social services, a licensed child-placing agency, or a child-caring institution, and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.

[1] Appellant's first argument is that the evidence did not support a finding that appellant willfully left the child in foster care for two years without showing positive response to the significant efforts of the Department of Social Services to encourage her to strengthen her parental relationship with her child because the evidence shows that appellant took several steps towards becoming a responsible person. We reject this argument.

Although the record shows that the appellant did indeed undertake to comply with the recommendations of the Department of Social Services and with court orders, and took steps on her own initiative to improve herself and her situation, it also shows a gradual abandonment of those efforts. As appellant candidly admitted at the September 1981 review hearing, since April 1981 she had quit attempting to comply with a parent-agency agreement which established goals for the parent to reach in order to regain custody of her child. Also, since April 1981,

although she had some income from the sale of her crafts, she had intentionally quit paying child support because she knew of another woman with a child in foster care who was not paying support. Since October 1981 appellant has had only two jobs: one as a waitress which lasted one day and another at Sharon Memorial Gardens in March of 1982 which lasted only one week. She quit the latter job because she had to work on Saturdays and she "wanted her weekends." Appellant was terminated by the Treatment Alternatives to Street Crime (TASC) program in September 1981 for her failure to remain in contact with the program and failure to pay the fee, without giving any indication that she was unable to pay the fee. Appellant was also terminated by Vocational Rehabilitation in December 1981 because appellant had not contacted them since 11 June 1981.

Appellant did continue to schedule visits with the child as late as 23 September 1982, the week of the termination hearing; however, appellant declined the petitioner's offer to schedule more frequent visits. Other than continuing the visits, albeit on an irregular basis, appellant effectively abandoned all efforts to regain custody of her child. In fact, appellant did not even attend the parental rights termination hearing.

The record shows that the Department of Social Services referred appellant to the Randolph Clinic for her drinking problems, to the Mental Health Center for her emotional problems, and to the Vocational Rehabilitation Division of the North Carolina Department of Human Resources and the Employment Security Commission for help in seeking employment. A social worker, Ann Barnes, tried to help appellant with her housing situation by contacting appellant's landlord in an attempt to persuade the landlord to permit appellant to remain in her apartment, by contacting appellant's mother to see if she would house appellant, and by referring appellant to the Salvation Army. Appellant declined Ms. Barnes' offer to accompany appellant in her search for housing and for employment. Ms. Barnes helped appellant clean her apartment and advised appellant to apply for food stamps. The Department of Social Services kept abreast of appellant's progress and in touch with the various other agencies. These efforts by the Department of Social Services were more than "significant"—they were diligent efforts.

We hold the record clearly supports the trial court's findings and conclusion that appellant willfully left the child in foster care for two years without showing positive response to "significant" efforts of the Department of Social Services to encourage appellant to strengthen her parental relationship with her child. The fact that appellant made some efforts within the two years does not preclude a finding of willfulness or lack of positive response. *See In re Moore*, 306 N.C. 394, 293 S.E. 2d 127, *rehearing denied*, 306 N.C. 565 (1982), *appeal dismissed*, --- U.S. ---, 103 S.Ct. 776, 74 L.Ed. 2d 987 (1983); *In re Burney*, 57 N.C. App. 203, 291 S.E. 2d 177 (1982).

[2] Appellant next argues that the trial court erred in making findings and conclusions to the effect that appellant has failed to show substantial progress in correcting the conditions which led to the removal of the child because: (1) the child was not removed for neglect, but for dependency, so the provision of G.S. 7A-289.32(3) requiring a showing to the court "that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect" is inapplicable; (2) if efforts have been made by the parent to strengthen the parental relationships, a finding of "lack of positive response" is precluded; and (3) the findings were not supported by clear, cogent and convincing evidence.

We reject these arguments. Implicit in the term "positive response" is that not only must positive efforts be made towards improving the situation, but that these efforts are obtaining or have obtained positive *results*. Otherwise, a parent could forestall proceedings indefinitely by making sporadic efforts for that purpose. As for the argument that progress is considered only when the child is removed for neglect, we note that the General Assembly deleted the "for neglect" language in G.S. 7A-289.32(3), effective 23 March 1983. G.S. 7A-289.32 (Cum. Supp. 1983); 1983 N.C. Sess. Laws Ch. 89, § 2.

There was clear, cogent, and convincing evidence to support the trial court's finding of lack of substantial progress. Appellant admitted she still had setbacks with her drinking. Appellant was still unemployed despite having had three jobs and being able to work. Appellant still lived a nomadic life—from June 1980 to

September 1982, appellant changed her address twenty-four times. Since October 1981, appellant had moved seven times.

[3] Appellant next argues that the trial court erred in finding and concluding that the appellant failed to pay a reasonable portion of the cost of foster care of the child because: (1) there was no evidence as to the cost of care of the child; (2) there was insufficient evidence of appellant's ability to provide support; and (3) appellant should be excused from paying support after the Department of Social Services announced its intention to seek a termination of appellant's parental rights. Again, we disagree.

Appellant concedes that she paid nothing towards the cost of foster care of her child since April 1981, more than a year before the filing of the petition. In July 1980, appellant was ordered to pay $10.00 per month for support. There is nothing in the record to indicate that appellant challenged this amount as being an unreasonable portion of the child care costs, therefore whether the amount appellant was ordered to pay is a reasonable portion of the costs is not before us. *In re Allen,* 58 N.C. App. 322, 293 S.E. 2d 607 (1982).

The record shows that appellant was able to pay support. The evidence shows that appellant is an able-bodied woman capable of working as a waitress or a maid. Appellant had three jobs while the child was in foster care. She quit one job where she had been earning $120 to $150 per week. She quit another job in March 1982 after working only a week because she did not want to work Saturdays. Vocational Rehabilitation had secured two job offers for her in July 1981, but there is no record of appellant's working during the months of July and August 1981. In September 1982, appellant indicated to a social worker she could make support payments from her craft sales. Appellant also indicated to the social worker that her attorney was upset because she had not been making support payments. Appellant told her she did not make any payments because she knew of another mother with a child in foster care who was not paying support and "she did not feel the need to comply with the Court Order" requiring appellant to pay $10.00 per week child support.

Finally, the announcement by the Department of Social Services of its intention to seek a termination of parental rights did not excuse appellant from paying support. A parent retains an

obligation to pay support up to the actual adjudication of termination of parental rights. Moreover, when a parent has forfeited the opportunity to provide some portion of the cost of the child's care by her misconduct, she "will not be heard to assert that . . . she has no ability or means to contribute to the child's care and is therefore excused from contributing any amount." *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E. 2d 800, 802-803 (1982).

There was plenary evidence that appellant had demonstrated that she "will not provide the degree of care which promotes the healthy and orderly physical and emotional well-being of the child." G.S. 7A-289.22(1). When the mother left from visits with the child, the child did not cry. The visits would seldom last the whole hour because the mother would usually leave early or arrive late. There was an apparent lack of bonding with the mother. When placed in foster care the child was seven months old. At the time of termination, the child was not quite three years old. The mother had also demonstrated an inability to provide a stable environment.

The decision to terminate parental rights is often a heart-wrenching one for the court. On one hand, the court considers the interests of the parents who, despite shortcomings, have often formed a bond with his or her child. On the other hand, the court must consider the best interests of the child. When the interests of the child and parents conflict, the best interests of the child control. G.S. 7A-289.22(3); *In re Smith*, 56 N.C. App. 142, 287 S.E. 2d 440, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982). This policy is reflected in G.S. 7A-289.31(a), which provides that although the court shall issue its order terminating parental rights upon a conclusion that one or more of the conditions authorizing termination exists, the statute still permits a judge to order that parental rights not be terminated if the judge shall go forward and make an adequate determination that the best interests of the child requires non-termination. Here, there was no such determination, and the order entered was correct. The requirements of the statute were fulfilled.

As stated by Justice Carlton's dissent in *In re Moore, supra*, at 407, 293 S.E. 2d at 134, "There are few losses, if any, more grievous than the abrogation of parental rights." We have examined the ends and the means used which achieved the results

in this case. Here, we note that the mother, the appealing parent, did not attend the trial even though she was given proper notice.

Affirmed.

Judges WELLS and PHILLIPS concur.