IN THE MATTER OF: CRYSTAL HARRIS, DOB: 8/30/74 AND SIDNELL HAR-
RIS, DOB: 4/19/79

No. 8714DC14

(Filed 6 October 1987)

1. Parent and Child § 1.6— termination of parental rights—children in foster care
   for two years—evidence sufficient

   In a termination of parental rights hearing, the evidence was sufficient to
   show that two incarcerated fathers willfully left their children in foster care
   for two consecutive years. While incarceration standing alone neither pre-
   cludes nor requires a finding that respondent willfully left a child in foster
   care, one respondent here was apparently not incarcerated during the entire
   two-year period being considered but never attempted to contact DSS or his
   child, and the other was incarcerated throughout the period, never called DSS,
   and called his child at her foster home once. N.C.G.S. § 7A-289.32(3).

2. Parent and Child § 1.6— termination of parental rights—substantial progress
   in correcting conditions

   The trial court could not terminate respondents' parental rights under
   N.C.G.S. § 7A-289.32(3) where petitioner did not allege and the trial court did
   not find that respondents had failed to show substantial progress in correcting
   the conditions leading to the removal of their children. N.C.G.S. § 7A-289.32(3)
   requires that petitioner prove the absence of both substantial progress and
   positive response in order to justify terminating parental rights under subsec-
   tion (3).

3. Parent and Child § 1.6— termination of parental rights—positive response to
   efforts of DSS

   The trial court improperly concluded that respondents failed to show a
   positive response to the diligent efforts of DSS to encourage each respondent
   to strengthen his parental relationship or plan for his child's future where the
   court found only that Evans was presently in prison, that DSS had unsuc-
   cessfully written to him, and that efforts by DSS to contact Evans had been
   futile; and there was no finding showing any DSS attempt to provide services
   or counsel to Ryals, or even a DSS attempt to locate him. N.C.G.S.
   § 7A-289.32(3).

4. Parent and Child § 1.6— termination of parental rights—establishment of pa-
   ternity

   The trial court in a termination of parental rights proceeding erred by
   concluding that neither respondent had established paternity of his child prior
   to the filing of the petition where the record revealed evidence of the
   respondents' paternity as of one month before the petition was filed, DSS car-
   ries the burden to prove the lack of paternity or legitimacy as of the petition's
   filing date, and the trial court made no findings on the other three circum-
   stances under N.C.G.S. § 7A-289.32(6) by which respondents could legitimize
   their children or show substantial support or care.

   Judge PHILLIPS concurs in the result.

APPEAL by respondents from *Hudson, Judge.* Order entered 3 September 1986 in District Court, DURHAM County. Heard in the Court of Appeals 13 May 1987.

The Durham County Department of Social Services (hereinafter, "DSS") petitioned the court to terminate the parental rights in two minors of their mother (who does not join in this appeal) and their respective putative fathers (the fathers being hereinafter called "respondents," or "Ryals" and "Evans," respectively). Petitioner specifically alleged that respondents had failed to provide the costs of their children's care, had failed to legitimate their children and had willfully abandoned them. After service by publication, Evans and Ryals filed their respective answers on 9 January 1985 and 22 January 1985. On 3 September 1985, the court terminated the mother's parental rights. The court also terminated respondents' respective rights based on statutory grounds set forth at N.C.G.S. Secs. 7A-289.32(3), (6) (1981). In terminating respondents' parental rights, the court made the following relevant findings of fact:

3. These children came into the custody of [DSS] in June, 1979 and have remained in the Department's custody since that time. They were adjudicated neglected by their mother.

13. Neither respondent . . . Evans nor respondent . . . Ryals, prior to the filing of the petition herein, established paternity of their respective children judicially or by affidavit.

15. As to . . . Evans' contact with [his putative child] from July 22, 1982 through June 16, 1983[,] he provided support through work release in the amount of $562.42. [DSS] was made aware that . . . Evans was in Greensboro at some point and [DSS] wrote to him at the address they were given but were advised that he was no longer at that address and they had no forwarding address. Mr. Evans is presently in prison. Efforts by DSS to contact Mr. Evans have been futile and he's made no effort to get in touch with [DSS] to schedule a visit or any other contact with [his child].

16. . . . Mr. Ryals went to prison prior to the children being taken into custody. He is presently in prison. Mr. Ryals has had no contact with [DSS] since the children came into

custody . . . . He called [his child's] foster home in May, 1985 and talked to her. The foster mother . . . felt [the call] created tension for [the child] and the foster mother was advised by [DSS] that if he called again to tell him to contact the Department. There is no evidence that he called again. He did not contact the Department and has made no effort to establish parental rights or responsibilities in this matter.

17. Both . . . Evans and . . . Ryals have evidenced a settled purpose and willful intent to forego all parental duties and obligations and to relinquish all parental claims to their respective children in this matter.

18. It is in the best interests of both [children] that the parental rights of their mother and respective fathers be terminated so they can be placed for adoption.

Based on these findings, the court concluded:

2. [G]rounds for termination exist as to parental right[s] of . . . Evans . . . and Ryals . . . under the provisions of G.S. [Section] 7A-289.32 in that they have failed within two years to show positive response to the diligent efforts of [DSS] to encourage them to strengthen the parental relationship to these children or to make and follow through with constructive planning for the future of these children.

3. Also, they have not, prior to the filing of the petition for termination, established paternity judicially or by affidavit.

At the time the DSS petition was filed, Section 7A-289.32 set forth, among others, the following two grounds for terminating parental rights:

(3) The parent has *willfully* left the child in foster care for more than two consecutive years *without showing* to the satisfaction of the court that *substantial progress* has been made within two years in correcting those conditions which led to the removal of the child for neglect, *or without showing positive response* within two years to the *diligent efforts* of [DSS] . . . to encourage the parent to strengthen the parental relationship to the child or to make and follow

through with constructive planning for the future of the child.

(6) The father of a child born out of wedlock has not *prior to the filing of a petition to terminate his parental rights:*

a. Establish[ed] paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Human Resources . . .; or

b. Legitimated the child pursuant to provisions of G.S. 49-10, or filed a petition for this specific purpose; or

c. Legitimated the child by marriage to the mother of the child; or

d. Provided substantial financial support or consistent care with respect to the child and mother.

(Emphasis added.) *Cf.* 1985 N.C. Sess. Laws, ch. 784, sec. 1 (1985) (effective 17 July 1985, petitioner must prove parent left child in foster care "more than eighteen months" without showing "reasonable progress under the circumstances" to terminate under subsection (3) ). Excepting to the court's findings of fact and conclusions of law, respondents appeal.

*Samuel Roberti for respondent-appellants.*

*Assistant County Attorney Ruth S. Cohen for petitioner-appellee.*

*Robert Whitfield for guardian ad litem.*

GREENE, Judge.

A finding of any one of the grounds separately enumerated under Section 7A-289.32 is sufficient to support termination of parental rights. *In re Tyson*, 76 N.C. App. 411, 415, 333 S.E. 2d 554, 557 (1985). However, DSS has the burden to prove all the facts justifying the termination ground asserted by clear, cogent, and convincing evidence. N.C.G.S. Sec. 289.30(d)-(e) (1981) (court must adjudicate existence or nonexistence of "any of the circumstances" authorizing termination; petitioner must prove facts by clear, cogent and convincing evidence); *compare* N.C.G.S. Sec.

7A-289.32(3a) (1986) (burden on petitioner to prove facts justifying termination by "clear and convincing" evidence) *with In re Montgomery*, 311 N.C. 101, 109, 316 S.E. 2d 246, 252 (1984) ("clear and convincing" and "clear, cogent and convincing" describe same evidentiary standard).

The instant case therefore presents two issues: (I) Under Section 7A-289.32(3), whether there was clear, cogent and convincing evidence that either Evans or Ryals had (A) "willfully" left his child in foster care for more than two consecutive years without showing either (B) "substantial progress" in correcting the conditions leading to the child's removal or (C) "positive response" to the "diligent efforts" of DSS; and (II) under Section 7A-289.32(6), whether there was clear, cogent and convincing evidence that "prior to the filing of the termination petition," neither respondent had established paternity, legitimated his child or otherwise provided support or care under the statute.

## I

## A

In order to terminate parental rights under the applicable pre-1985 version of Section 7A-289.32(3), petitioner must prove (a) the parent has "willfully left the child in foster care for more than two consecutive years" without showing (b) "substantial progress" in correcting those conditions that led to the child's removal or (c) "positive response" to the "diligent efforts" of DSS to encourage the parent to strengthen the parental relationship or plan for the child's future. *See In re Wilkerson*, 57 N.C. App. 63, 68-69, 291 S.E. 2d 182, 184-85 (1982) (upholding termination where evidence established all three requirements); *In re Tate*, 67 N.C. App. 89, 92-94, 312 S.E. 2d 535, 538-39 (1984) (upholding separate findings of lack of substantial progress and positive response).

As to the respondents' "willfully" leaving their respective children in foster care, the trial court found both respondents "have evidenced a settled purpose and willful intent to forego all parental duties and obligations and to relinquish all parental claims to their respective children in this matter." Although Section 7A-289.32(3) merely requires proving the parents willfully left their child in foster care for two years, we note the court's finding restates the common definition of the broader concept of

"abandonment." *E.g., In re Maynor*, 38 N.C. App. 724, 726, 248 S.E. 2d 875, 876-77 (1978). Although petitioner alleged "willful abandonment" as a ground for termination, the court did not terminate respondents' rights on the specific ground of abandonment or neglect. *Cf. In re Smith*, 56 N.C. App. 142, 147, 287 S.E. 2d 440, 443, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982) ("abandonment" under N.C.G.S. Sec. 7A-517(21) (1981) supports termination for "neglect" under N.C.G.S. Sec. 7A-289.32(2) (1981) ); *see also* N.C.G.S. Sec. 7A-289.32(8) (1986) (adding "willful abandonment" for six months prior to petition as ground for termination). Although the breadth of "willful abandonment" should often encompass "willfully leaving" a child in foster care, the broad finding of willful abandonment is not essential to the more limited determination required under Section 7A-289.32(3).

[1]  While their brief is not altogether clear on this point, respondents apparently contend that their periodic incarcerations could preclude finding either respondent "willfully" left his child in foster care for two consecutive years. However, a respondent's incarceration, standing alone, neither precludes nor requires finding the respondent willfully left a child in foster care. *Compare In re Burney*, 57 N.C. App. 203, 206, 291 S.E. 2d 177, 179 (1982) (rejecting argument that periods of incarceration preclude such finding) *with Maynor*, 38 N.C. App. at 726-27, 248 S.E. 2d at 877 (1978) (incarceration alone is insufficient to show willful abandonment). Although he was apparently not incarcerated during the entire two-year period being considered, we note Evans has never attempted to contact DSS or his child during that period. Ryals has been incarcerated throughout the period; he has similarly never contacted DSS, but did call his child once at her foster home in May 1985. In accord with our decision in *Burney*, we think these facts demonstrate respondents' leaving their children in foster care was "willful." *Burney*, 57 N.C. App. at 206, 291 S.E. 2d at 179.

B

[2]  Petitioner neither alleged nor did the trial court find that respondents had failed to show substantial progress in correcting the conditions leading to the removal of their children. The trial court apparently misconstrued Section 7A-289.32(3) to allow termination where *petitioner* could show either respondents' lack of

substantial progress or respondents' lack of positive response. A careful reading of the statute reveals Section 7A-289.32(3) requires the petitioner to prove that the *parent* has not shown either substantial progress or positive response; thus, petitioner must prove the absence of *both* substantial progress *and* positive response in order to justify terminating respondents' parental rights under subsection (3). *Cf. Tate*, 67 N.C. App. at 92-94, 312 S.E. 2d at 538-39; *Wilkerson*, 57 N.C. App. at 68-69, 291 S.E. 2d at 184-85; N.C.G.S. Sec. 7A-289.30(d) (1981) (court shall adjudicate existence or nonexistence of "any of the circumstances" authorizing termination under Section 7A-289.32); *see also Burney*, 57 N.C. App. at 206, 291 S.E. 2d at 179 (although discussion limited to affirming finding that respondent lacked "positive response," court noted other findings established respondents' failure to make "substantial progress").

Accordingly, we conclude the court could not terminate respondents' parental rights under Section 7A-289.32(3) absent the necessary additional conclusion and supporting findings that respondents failed to show substantial progress in correcting the conditions leading to the removal of their children.

C

[3]  Even had the court found that respondents failed to make the necessary substantial progress under Section 7A-289.32(3), we also hold the court improperly concluded that both respondents failed to "show positive response to the diligent efforts" of DSS to encourage each respondent to strengthen his respective parental relationship or plan for his child's future. The court made only one finding directly relevant to this conclusion: noting Evans was "presently" in prison, the court found that DSS unsuccessfully wrote to Evans in Greensboro and that "efforts by [DSS] to contact . . . Evans have been futile . . . ." There is simply no finding showing any DSS attempt to provide services or counsel to Ryals, or even showing any DSS attempt to locate him: the court only noted that Ryals did not contact DSS after DSS acquired custody of his child. Regardless of any evidence supporting these findings, the findings are themselves legally insufficient to discharge DSS's burden to show, with clear and convincing evidence, its diligent efforts to encourage respondents to strengthen their parental relationships or undertake planning for their children's future. *Cf.*

*Wilkerson,* 57 N.C. App. at 69, 291 S.E. 2d at 185 (summarizing respondents' lack of positive response to petitioner's diligent efforts which included 6½ years of continuous contact, frequent home visits and counselling attempts); *Tate,* 67 N.C. App. at 93, 312 S.E. 2d at 538-39 (petitioner referred respondent for alcoholism and employment services, assisted securing and maintaining housing, kept abreast of respondent's progress and stayed in touch with other agencies).

We recognize both respondents were incarcerated during part or all of the two-year period under consideration. We note the court did specifically find that "efforts to contact" Evans had been "futile." Assuming *arguendo* that this finding supports the court's conclusion that respondents did not show positive response to DSS's diligent efforts, the finding is not itself supported by competent evidence. The only evidence pertaining to this finding is the case worker's testimony that she sent a letter to Greensboro inviting Evans to a DSS review. The case worker took no further action after the letter was returned. This evidence does not constitute clear and convincing proof that efforts to contact Evans were futile.

In any event, DSS's lone attempt merely to contact Evans hardly approaches the diligent efforts to strengthen family ties approved in *Wilkerson* and *Tate.* Other than the letter to Evans, we find no evidence in the record of any attempt even to contact either respondent other than the DSS affidavit for service by publication under N.C.G.S. Sec. 7A-289.27 (1981). This affidavit may evidence the "due diligence" necessary for service under that statute. *See generally In re Clarke,* 76 N.C. App. 83, 85-87, 332 S.E. 2d 196, 198-200, *disc. rev. denied,* 314 N.C. 665, 335 S.E. 2d 322 (1985). However, petitioner's "due diligence" in serving its petition after 29 December 1983 does not determine whether it made "diligent efforts" to encourage and counsel family relationships for two consecutive years prior to termination under Section 7A-289.32(3).

Although the court made no findings concerning Ryals on this issue, we note the revealing testimony given by the case worker: "I've never offered . . . Ryals a service contract to sign. He has been in jail and it would not make sense to provide him with a service contract . . . . To my knowledge no one has taken

the children out to where . . . Ryals is in jail." As to DSS's "diligent efforts," we hold only that DSS has shown no diligent efforts whatsoever to help respondents; however, we are cognizant Section 7A-289.32(3) must on occasion be applied to a respondent who has been incarcerated during part or all of the two-year (now eighteen-month) trial period. Like DSS, future petitioners may conclude any attempt to contact an incarcerated respondent is "futile." Whether or not such an assessment is reasonable, the respondent's obligation to respond positively to DSS's diligent efforts certainly presupposes *some* stimulus from DSS. Thus, we question whether a court may conclude a respondent failed to respond positively to DSS's allegedly "diligent efforts" under Section 7A-289.32(3) where DSS never actually made contact with respondent in any way. *Cf. Maynor*, 38 N.C. App. at 727-28, 248 S.E. 2d at 877-78 (since abandonment under N.C.G.S. Sec. 48-2(3b) (1976) requires proof of DSS "diligent efforts," insufficient evidence to find abandonment where no DSS contact with respondent).

Respondents also except to the court's finding that they have evidenced a "settled purpose" to relinquish all parental claims to their respective children. Since the court did not terminate respondents' rights for "neglect" under Section 7A-289.32(2), we do not pass on the sufficiency of evidence supporting the court's finding that respondents had, in effect, willfully abandoned their children. However, assuming clear and convincing evidence supports this finding, the court might properly consider terminating respondents' rights for "neglect" under Section 7A-289.32(2). *See Smith*, 56 N.C. App. at 147, 287 S.E. 2d at 443; *see also In re Graham*, 63 N.C. App. 146, 150-51, 303 S.E. 2d 624, 627, *cert. denied*, 309 N.C. 320, 307 S.E. 2d 170 (1983) (incarcerated respondent's lack of involvement with child established neglect under Section 7A-289.32(2) ).

II

[4] The court also concluded neither respondent had "established paternity of [his] respective child . . . judicially or by affidavit" prior to the filing of the petition on 29 December 1983; the findings supporting this legal conclusion merely restate it. We must reverse the court's legal conclusion on two grounds. First, the record only reveals evidence of the respondents' paternity as

of one month before the petition was filed. Section 7A-289.32(6) requires that petitioner show respondents have failed to comply with its terms "prior to the filing of a petition to terminate . . . parental rights": Either respondent could have established his paternity or the legitimacy of his child during that one-month period. Since the only logical construction of subsection (6) under *Montgomery* is that DSS carries the burden to prove the lack of paternity or legitimacy as of the petition's filing date, we hold DSS failed to discharge the admittedly difficult evidentiary burden of proving the absence of a fact. *See Montgomery*, 311 N.C. at 109-10, 316 S.E. 2d at 252.

In addition, the court made no findings on the other three circumstances under Section 7A-289.32(6) by which respondents could legitimize their children or show substantial support or care. As with the similarly-phrased provisions of Section 7A-289.32(3), the language of Section 7A-289.32(6) dictates that DSS must prove respondents failed to take, not one, but *any* of the four actions listed in parts (a)-(d) of Section 7A-289.32(6). *See Tyson*, 76 N.C. App. at 416, 333 S.E. 2d at 537 (termination under subsection (6) authorized where court found respondent "never established paternity, legitimated the child, or provided substantial support or care"). While we note a county attorney alleged the respondents' "putative" fatherhood in the DSS affidavit for publication, we reject the contention that the allegation constitutes clear, cogent and convincing evidence that respondents failed to comply with Section 7A-289.32(6). Indeed, the record reveals Ryals provided significant financial support before his incarceration. While his support was less substantial, Evans also provided some funds during his incarceration. Thus, if respondents' parental rights are to be terminated under Section 7A-289.32(6), there must be further fact-finding to determine all the circumstances under parts (a)-(d) of the section.

### III

As the trial court's findings are insufficient to terminate respondents' parental rights upon the grounds cited, we vacate the trial court's order terminating respondents' rights and remand the case for further proceedings not inconsistent with this opinion.

Vacated and remanded.

Judge COZORT concurs.

Judge PHILLIPS concurs in the result.