IN THE MATTER OF WILBUR JAMES ROBERT FRASHER, CARRIE ANN FRASHER

No. COA01-472

(Filed 4 December 2001)

## 1. Termination of Parental Rights— lack of stability—clear, cogent, and convincing evidence

Although respondent mother contends the trial court erred by terminating respondent mother's parental rights based on evidence that she still suffered from a mental condition which rendered her incapable of providing for the care and supervision of her children on the date of the termination hearing, the trial court's primary basis for its decision to terminate her parental status was based on her lack of stability, and there was clear, cogent, and convincing evidence that the mother's life was no more stable now than it was when the minor children were removed from her custody and that she had willfully left the children in foster care for more than twelve months without making reasonable progress toward correcting those conditions which led to their removal since: (1) the mother was still not employed and had not obtained stable housing; and (2) the mother did not appear at the termination hearing despite the best efforts of her attorney to contact her by letter at her last known address, and her whereabouts were unknown.

## 2. Termination of Parental Rights— diligent efforts requirement

The trial court did not abuse its discretion by terminating respondent mother's parental rights even though the mother asserts the Department of Social Services (DSS) failed to provide

IN RE FRASHER

[147 N.C. App. 513 (2001)]

services to the mother to assist her in correcting the conditions that led to her children's removal, because N.C.G.S. 7B-1111(a)(2) deleted the diligent efforts requirement, and therefore, a determination that DSS made diligent efforts to provide services to a parent is no longer a condition precedent to terminating parental rights.

Appeal by respondent from order entered 30 November 2000, *nunc pro tunc* 2 November 2000, by Judge Jonathan L. Jones in Burke County District Court. Heard in the Court of Appeals 5 November 2001.

*Stephen M. Schoeberle for petitioner-appellee Burke County Department of Social Services.*

*No brief filed by guardian ad litem Mary McKay.*

*Russell R. Becker for respondent-appellant.*

SMITH, Judge.

The Burke County Department of Social Services ("DSS") first provided services to the Frasher children in 1989, and have provided treatment for reports of improper care, improper discipline, and physical and sexual abuse. On 17 March 1999, a petition was filed by DSS alleging that Wilbur James Robert Frasher and Carrie Ann Frasher were neglected and abused juveniles. DSS stated in the petition that the children's maternal grandfather, James Metcalf, was sleeping in the same bed as Wilbur and had touched Wilbur's genitals several times. The petition further alleged that Metcalf had inappropriately disciplined the juveniles, having beaten them with fan blades and switches. Additionally, Metcalf had allowed Wilbur to drink beer and smoke cigarettes, their home was filthy and roach infested, and Carrie was sleeping on the floor. Finally, DSS noted that Wilbur had been diagnosed with attention deficit hyperactivity disorder and medication had been prescribed, but Metcalf had failed to monitor the administration of Wilbur's medication. The children had been placed in Metcalf's custody by respondent-mother after she was imprisoned for violating her probation for larceny and stabbing a man. At the time the petition was filed, respondent-mother was living with her boyfriend.

On 5 May 1999, at a pre-hearing conference, respondent-mother and the children's father stipulated that they "did not resist a finding

that the allegations contained in the petition are true" and that the children were therefore abused and neglected juveniles. Accordingly, on 1 June 1999, Wilbur was adjudicated an abused and neglected juvenile and Carrie was adjudicated a neglected juvenile. The children were placed in the custody of DSS, and respondent-mother was ordered to: (1) undergo a complete psychological and substance abuse evaluation and cooperate with any recommendations; (2) notify DSS of any change in address; (3) maintain a stable and appropriate residence; and, (4) obtain employment.

On 15 June 2000, DSS filed a petition to terminate the parental rights of respondent-mother and the children's father. A hearing was held on 2 November 2000, but respondent-mother did not attend the hearing. On 30 November 2000, *nunc pro tunc* 2 November 2000, the trial court terminated respondent-mother's parental rights. Respondent-mother appeals.

[1] Respondent-mother first argues that there was insufficient evidence that she still suffered from a mental condition which rendered her incapable of providing for the care and supervision of her children on the date of the termination hearing. Respondent-mother contends that the trial court should have ordered a psychological evaluation because there had been changed circumstances between the time of the initial evaluation and the hearing date.

After careful review of the record, briefs and contentions of the parties, we affirm. G.S. 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "[T]he party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997) (citing G.S. 7A-289.30(e)). Here, the trial court concluded that the children were abused and neglected juveniles, and that respondent-mother had willfully left the children in foster care for twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances had been made within those twelve months in correcting those conditions which led to the children's removal. G.S. 7b-1111(1) and (2). The trial court based its conclusion on its finding that:

Ms. Harbison [the respondent mother] initially and repeatedly has been ordered to obtain and maintain employment, maintain a

stable and appropriate residence and notify the Department of any address changes. She has failed to do so, and her whereabouts today are unknown. She has resided in multiple residences, some without electricity. Her psychological evaluation revealed a diagnosis of narcissistic personality disorder with histrionic and depressive personality features. She was deemed not to be a good candidate for psychotherapy or changing behavior, and she had not participated in any treatment. Her life is no more stable now tha[n] it was when the minor children were removed from her custody. She has not corrected those conditions which led to the removal of the minor children from her custody. She has difficulty meeting her own needs and supporting herself and she is not capable of supporting and appropriately meeting the needs of the minor children.

Although the trial court considered respondent-mother's mental status, the trial court did not conclude that her intelligence or mental status rendered her incapable of caring for her children. See G.S. 7B-1111(a)(6). Instead, the primary basis for the trial court's decision to terminate respondent-mother's parental rights was her lack of stability. Dalena Jackson, a DSS social worker, testified that respondent-mother was still not employed and had not obtained stable housing. Additionally, respondent-mother did not appear at the termination hearing "despite the best efforts of her attorney to contact her by letter at her last known address." The trial court stated that her whereabouts were "unknown." Thus, the trial court found that respondent-mother's life was "no more stable now than it was when the minor children were removed from her custody." Accordingly, we conclude there was clear, cogent and convincing evidence to support the trial court's finding that respondent had willfully left Wilbur and Carrie in foster care for twelve months without making reasonable progress towards correcting those conditions which led to their removal.

[2] Respondent-mother next argues that the trial court abused its discretion by terminating her parental rights. Respondent-mother asserts that DSS was obligated to provide services to her to assist her in correcting the conditions that led to her children's removal, but DSS failed to do so. See In re Harris, 87 N.C. App. 179, 185-86, 360 S.E.2d 485, 488-89 (1987). We do not agree.

G.S. 7A-289.32(3), the applicable termination statute when Harris was decided, included a requirement that DSS undertake "diligent efforts" to "encourage the parent to strengthen the parental relation-

ship to the child or to make and follow through with construc-
tive planning for the future of the child." However, G.S. 7A-289.32(3)
was repealed and replaced by 7B-1111(a)(2) effective 1 July 1999.
7B-1111(a)(2) deleted the "diligent efforts" requirement, indicating
an intent by the legislature to eliminate the requirement that DSS
provide services to a parent before a termination of parental rights
can occur. Thus, we hold that a determination that DSS made diligent
efforts to provide services to a parent is no longer a condition
precedent to terminating parental rights.

Accordingly, the order terminating respondent's parental rights
is affirmed.

Affirmed.

Judges McGEE and HUNTER concur.