ELMORE, Judge.
Respondent-mother Sandra Riddle Marler (respondent-mother) appeals from an order terminating her parental rights as the mother of H.A.T., C.A.T., and C.W.T. For the reasons stated herein, we affirm the trial court's order.
Evidence from the petitioner and respondent tended to show that respondent-mother is the biological mother of the three children addressed in this case. Furthermore, she is the mother of an older male sibling also involved in these matters. Until their removal from respondent-mother's home, H.A.T., C.A.T. and C.W.T. lived with their mother, the older sibling, and their biologicalfather, Claude Marler (Mr. Marler). Mr. Marler has relinquished his parental rights to the children. The father listed on the birth certificate is Charles Wayne Thomason, whose rights are not currently at issue.
Because of numerous incidents indicating possible abuse or neglect of the children, Buncombe County Department of Social Services (BCDSS) has been involved with the Marler family since 1991. The reports included allegations of sexual abuse by Mr. Marler of an older female step-sibling of the minor children concerned here. The report was substantiated by BCDSS, and the child was removed from the home. Other incidents investigated by BCDSS include the children having driven over one of their siblings with a tractor.
In March and April 2000 there were several reports of extreme filth and odors at the Marler residence, which prompted BCDSS to file petitions on 8 May 2000 in order to obtain temporary custody. During the proceedings on these petitions, seven witnesses testified as to evidence of abuse and neglect. Respondent-mother and Mr. Marler agreed that the children were neglected and that the circumstances "created a danger to the health of the children." In an order entered 28 August 2000, Judge Gary S. Cash concluded that H.A.T., C.A.T., and C.W.T. were neglected pursuant to N.C. Gen. Stat. § 7B-101(15), as there were multiple concerns with the family "including roaches, odors and clutter in the home, inadequate food, discipline issues, nutrition, sleeping arrangements, sexuality issues, medication, lice, dental problems, and lack ofsupervision." In accordance with Judge Cash's order, the children were removed from the home with the goal being reunification after proper steps had been taken by the children's parents.
In February 2001, BCDSS began investigating allegations of sexual abuse against H.A.T. by her father. A few months later came reports that the older male sibling had abused C.A.T. and C.W.T. while they were in the home. On 23 October 2001, Judge Peter Roda entered an order finding that H.A. was sexually abused by her father and that respondent-mother "knew of the abuse but did not protect the child from sexual abuse." C.A.T. and C.W.T. were also found to be neglected at that time. At this time, BCDSS changed its goal from reunfication of the children with their parents to adoption in a new home.
After hearings in November 2002, Judge Shirley Brown entered an order dated 18 March 2003 that terminated the parental rights of respondent-mother with respect to each of the three children. The trial court concluded that the children had been both neglected and wilfully left in foster care for over a year without reasonable progress having been made to correct the conditions which prompted their removal.
I.
In a termination of parental rights case, the standard of review is a two-part process: (1) the adjudication phase, governed by section 7B-1109 of our General Statutes, and (2) the disposition phase, governed by section 7B-1110. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication phase, the burden of proof rests on petitioner to prove by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination set forth in section 7B-1111 exists. N.C. Gen. Stat. § 7B-1109(e)-(f) (2001); Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. The standard of appellate review is whether the trial court's findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law. In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996).
If petitioner meets the burden of proof that grounds for termination exist, the trial enters the disposition phase and the court must consider whether termination is in the best interest of the child. Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. It is within the trial court's discretion to terminate parental rights upon a finding that it would be in the best interest of the child. Id. at 613, 543 S.E.2d at 910. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).
II.
Looking first at the adjudication phase, a court's finding of one of the statutory grounds for termination, if supported by competent evidence, will support an order terminating parental rights. In re Frasher, 147 N.C. App. 513, 515, 555 S.E.2d 379, 381 (2001). Section 7B-1111 provides nine separate grounds upon whichan order terminating parental rights may be based. N.C. Gen. Stat. § 7B-1111 (2003).
In order to terminate parental rights, the court must find one or more of the statutory factors listed in section 7B-1111. In ruling that respondent's parental rights should be terminated as to H.A.T., C.A.T., and C.W.T., the trial court in the case sub judice relied upon the existence of two statutory grounds. Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), the trial court concluded as a matter of law that respondent-mother had neglected the children and had not made the necessary improvements that would enable her to provide proper care and supervision. Additionally, pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), the trial court found that respondent-mother had willfully left the children in foster care without making reasonable progress to correct the conditions which led to the children's removal.
Respondent-mother first argues that the trial court erred by holding that grounds existed for termination of parental rights when such a conclusion was not supported by competent evidence or sufficient findings of fact. Because the trial court's conclusions of law include a finding of two statutory ground under section 7B-1111 that properly support termination of a parent's rights, the appropriate inquiry would be whether those conclusions of law were based upon findings of fact supported by competent evidence.
We conclude that the trial court did make sufficient findings of fact to sustain its conclusions of law and that those findings were supported by clear, cogent, and convincing evidence. UnderN.C. Gen. Stat. § 7B-1111(a)(1)(2003), parental rights may be terminated upon a finding that the "parent has abused or neglected the juvenile." In this case, the children were determined to have been neglected by respondent-mother. A "neglected juvenile" is defined in section 7B-101(15) of the General Statutes as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2003).
With regard to neglect under section 7B-1111(a)(1), the trial court moved from the conclusion that each child had been neglected to a determination that respondent-mother had made no reasonable progress in correcting the problems that gave rise to the original removal of the children from her custody. The findings of fact include that, while in respondent-mother's care, the children continuously lived in extreme squalor and that respondent-mother failed to provide them the special services necessary to remedy the effects of their previous abuse and neglect. The trial court also found that respondent-mother does not fully comprehend why the children were removed from her custody and moreover that she continues to reside with the sex-offender father and an older sibling also accused of sexual abuse. Furthermore, the trial court found as fact that the children had been sexually abused in various instances by both their father and an older sibling while living with their mother. It determined that respondent-mother had eithersuspected or permitted this alleged abuse but never intervened to prevent it. Indeed, the trial court found that respondent-mother had allowed her minor daughter to sleep alone in the bed with Mr. Marler apart from other family members. Because there was evidence that respondent-mother had not shown progress in correcting these and other conditions, the trial court concluded that the children would likely again be neglected if returned to their mother's custody. In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).
We cannot agree with respondent-mother's contention that the trial court relied simply upon the prior adjudication of neglect. We also cannot agree with her argument that the trial court did not take evidence as to whether respondent-mother had made progress in correcting the conditions which had led to the children being removed from her custody. Indeed, after reviewing the record, we find competent evidence to support the trial court's findings of fact. The testimony of Susan Strickland of BCDSS (Ms. Strickland) as to respondent-mother's progress provides clear, cogent, and convincing evidence for the trial court's findings of fact as to respondent-mother's progress. Ms. Strickland testified that, among other things, respondent-mother had not corrected any of the problems that had led to the children's removal from the home. The testimony of Ms. Strickland also indicated that respondent-mother could not provide proper supervision even during her visits with the children at the agency. She also testified that at the time the visitations were discontinued, respondent-mother had notimproved her supervision sufficient to protect the children. The trial court could certainly have concluded from this evidence that the children had been neglected and that respondent-mother had not made the changes or personal improvements necessary to establish a safe environment for her children. These findings of fact thus support the trial court's conclusions of law.
The same evidence supports the findings of fact and conclusions of law that the trial court made pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Section 7B-1111(a)(2)(2003) provides for termination of parental rights upon a finding that the "parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." The trial court concluded as a matter of law that respondent-mother had willfully left the children in foster care since 8 June 2000 and that she had failed to make reasonable progress in correcting the conditions which led to the removal of the minor children. This conclusion is supported by the trial court's finding of fact that respondent-mother "has made no progress in correcting any of the conditions which led to the removal" of the minor children. These findings are in turn supported by the testimony of Ms. Strickland discussed above, which provides evidence that the respondent-mother had not made reasonable progress towards remedying the grounds for removal enumerated in the judgment of Judge Cash on 28 August 2000. Again,Ms. Strickland's testimony provides the competent evidence necessary to affirm the trial court's decision on appeal.
III.
Respondent-mother next assigns error by arguing that Ms. Strickland's testimony about H.A.T.'s reported sexual abuse was inadmissable hearsay. Here, respondent-mother also argues that the trial court found facts not supported by competent evidence.[1] We, however, need not address this argument because even if the evidence were inadmissable hearsay, respondent-mother could not have been prejudiced by the error. In a bench trial, "the court is presumed to disregard incompetent evidence. . . . Where there is competent evidence to support a court's findings, the admission of incompetent evidence is not prejudicial." In re McMillon, 143 N.C. App. 402, 411, 546 S.E.2d 169, 175, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001).
Even if the testimony of Ms. Strickland as to H.A.T.'s reported abuse were to be excluded, there would still be other evidence capable of supporting the trial court's findings of fact and conclusions of law that respondent-mother had not progressed in her ability to protect and provide for her children. There is, for example, Ms. Strickland's testimony that the visitations by respondent-mother were chaotic and failed to reveal any indicationthat respondent-mother could properly supervise her children. The testimony about the alleged abuse does not constitute the sole evidentiary basis for the trial court's findings of fact. As such, we do not find the prejudice necessary to disturb the trial court's findings of fact on appeal.
IV.
Respondent-mother contends that the trial court abused its discretion in deciding to terminate her parental rights because it employed improper findings to find that it was in the best interest of the children to do so. A trial court's decision to terminate parental rights in the dispositional phase of such proceedings is, however, reviewed only for abuse of discretion. In re Nesbitt, 147 N.C. App. at 352, 555 S.E.2d at 662. Because we find no prejudicial error or other error in the evidence or findings of fact used to conclude that two statutory grounds found under N.C. Gen. Stat. § 7B-1111 existed as a matter of law, the trial court had the authority to terminate respondent-mother's parental rights at its discretion. We find no abuse of that discretion in the case sub judice.
V.
Finally, respondent-mother assigns as error the trial court's consideration of her failure to admit knowledge of the alleged abuse in determining whether to terminate her parental rights. According to respondent-mother, this violated her rights against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. Respondent-mother's reliance upon the Constitution is misplaced, however, since this Court has already held that there is no right to remain silent in civil abuse and neglect proceedings. See In re Pittman, 149 N.C. App. 756, 760-61, 561 S.E.2d 560, 564, disc. review denied, 356 N.C. 163, 568 S.E.2d 608 (2002), cert. denied, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). In such proceedings, "the court's primary concern must be the child's best interest." Id. It was not error for the trial court to consider her silence as another indication of her inability to be an effective parent to her children.
VI.
We find that the conclusions of law made by the trial court are supported by findings of fact that are themselves supported by clear, cogent, and convincing evidence. Moreover, in disposing of the case, the trial court did not abuse its discretion by deciding to terminate respondent-mother's parental rights. As such, the trial court's decision will not be disturbed on appeal.
Affirmed.
Judges BRYANT and GEER concur.
Report per Rule 30(e).

We can only assume that respondent-mother, who has combined these two assignments of error, is arguing that the findings are only supported by hearsay. Presumably according to respondent-mother, this would render the findings of fact unsupported by any competent evidence once the hearsay is removed from the trial court's consideration.