IN THE MATTER OF: M.L.J., A Minor Child.
No. COA09-1038.
Court of Appeals of North Carolina.
Filed December 22, 2009.
This case not for publication
Holly M. Groce for petitioner-appellee.
Lisa Skinner Lefler for respondent-appellant.
Laura Beck for guardian ad litem-appellee.
GEER, Judge.
Respondent mother appeals from the trial court's order terminating her parental rights to her minor child, M.L.J. ("Melissa").[1] Because the trial court's unchallenged findings of fact support its conclusions that grounds existed to terminate respondent mother's parental rights under N.C. Gen. Stat. § 7B1-111(a)(2) (2007) and that termination would be in the child's best interests, we affirm.
Facts
Respondent mother has six children, one of whom is over age 18. The Davie County Department of Social Services ("DSS") became involved with this family in August 2006 after it received reports regarding respondent mother's lack of care and supervision of her minor children, including leaving her children with inappropriate caretakers and not meeting the children's basic needs. DSS provided intensive family preservation services to respondent mother through March 2007. Four months after ceasing services, however, on 10 July 2007, DSS received another report that four of respondent mother's children, including Melissa, were again receiving inadequate care and supervision.
On 17 July 2007, DSS filed a juvenile petition alleging that Melissa  the youngest child, born in 2006  was a neglected and dependent juvenile.[2] The petition alleged that respondent mother "frequently dropped [her] children off with anyone who would take them" and "would not pick up the children for several days." One of the individuals with whom the children stayed on numerous occasions had a substantial criminal history, including possession of controlled substances, larceny, and communicating threats. DSS further alleged that upon a visit to respondent mother's home, a social worker found the home and yard to be strewn with garbage, debris, and clothing; electricity to the home had been recently disconnected; and the refrigerator contained only a case of beer. According to the petition, DSS determined that respondent mother's only income source was a check for social security death benefits that three of the children received as the result of the death of their father.
On 17 October 2007, the trial court adjudicated Melissa and the other three children to be neglected and dependent juveniles. In its disposition order entered on the same day, the trial court found that respondent mother was attending parenting and teen classes, that she was scheduled for a psychological evaluation and approved for individual therapy, that she was visiting her children at the agency, and that she was "making slow progress toward realizing the goals of her case plan." It also found, however, that respondent mother was unemployed, that she seemed "resistant" to doing what DSS asked her to do, and that she tested positive for Hydrocodone and Oxycodone, although respondent mother claimed to have prescriptions for these medications.
The trial court continued legal and physical custody of the minor children with DSS. The trial court ordered respondent mother to (1) maintain suitable housing that met minimum standards, (2) gain and maintain employment, (3) attend all 12 weeks of parenting and teen classes, (4) complete a psychological evaluation and follow all recommended treatment, (5) work toward completing the goals outlined in her Out of Home Family Services Agreement, (6) continue with her substance abuse assessment and follow any resulting recommendations, (7) contact a licensed therapist to address any possible mental health issues and follow any resulting recommendations, and (8) attend consumer credit counseling upon DSS' referral.
Following review hearings in December 2007 and March 2008, the permanent plan for all four children remained reunification with respondent mother. In a review order entered 28 January 2008, however, the trial court found that respondent mother's second oldest child had also been placed in DSS custody because of an incident that resulted in the oldest child being charged with assault on a female and injury to personal property. At that point, five of respondent mother's six children were in DSS custody.
On 16 July 2008, the trial court held a permanency planning hearing. In an order entered 6 August 2008, the trial court found that respondent mother had completed her parenting classes and her substance abuse assessment. On the other hand, respondent mother had missed several appointments with her social worker, had criminal charges pending against her, and had recently been terminated from her employment. The trial court further found that Dr. John Warren had performed a psychological evaluation of respondent mother. Dr. Warren had concluded that respondent mother had a substance abuse disorder and personality disorder and was not capable of learning how to safely and effectively parent her children.
The trial court nevertheless continued the permanent plan as reunification, although it added a secondary plan of termination of parental rights and adoption. It ordered DSS to help respondent mother locate a therapist and to "make extra efforts to assist Respondent Mother for the next 30 days to see if Respondent Mother can make any further progress." Respondent mother was required to begin mental health treatment with the assistance of DSS; to provide DSS copies of five job applications per week, demonstrating her efforts to locate employment; to resume her parenting classes; and to start credit counseling classes. The trial court gave respondent mother 30 days "to demonstrate her progress to this Court."
The trial court held a review and permanency planning hearing approximately 30 days after the 16 July 2008 hearing. In an order filed on 10 September 2008, the trial court found that although respondent mother had, as required, made contact to start credit counseling classes, had attended an individual therapy appointment, and planned to attend parenting classes when classes began, respondent mother had "not completed the two major items that the Court was looking to accomplish." She was not "able to provide a safe stable home or the financial, educational and medicinal assistance that the children need."
More specifically, the trial court found that respondent mother failed to provide DSS with five job applications a week, that photos of respondent mother's home showed deplorable conditions, that there was no running water in the home despite DSS' efforts, and that respondent mother had been evicted from the home for nonpayment of rent. The trial court further found that over a year's time, respondent mother had not been able to correct the conditions that led to the removal of the children, although she had completed some minor requirements set by the court. Consequently, the court ordered that reunification efforts cease and changed the permanent plan for two children to guardianship and the permanent plan for the other three children, including Melissa, to termination of parental rights/adoption.
On 5 February 2009, DSS filed a petition to terminate respondent mother's parental rights to Melissa. DSS alleged grounds for termination existed pursuant to N.C. Gen. Stat. § 7B1-111(a)(1), N.C. Gen. Stat. § 7B-1111(a)(2), and N.C. Gen. Stat. § 7B-1111(a)(7). On 13 May 2009, the trial court entered an order terminating respondent mother's parental rights to Melissa after concluding that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(1) and N.C. Gen. Stat. § 7B-1111(a)(2) and that termination of respondent mother's parental rights was in Melissa's best interest. Respondent mother timely appealed to this Court.

Discussion
Termination of parental rights involves two stages. In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). "In the adjudicatory stage, the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). This Court "review[s] whether the trial court's findings of fact are supported by clear and convincing evidence and whether the findings of fact support the conclusions of law." Id. "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." Id. at 98, 564 S.E.2d at 602.

I
Respondent mother first contends that the trial court erred in concluding that grounds existed to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). Under that statute, the trial court may terminate parental rights if
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. . . .
Id.
There is no dispute that respondent mother left Melissa in foster care for a period of 12 months. With respect to whether respondent mother failed to make reasonable progress in correcting the conditions that led to the removal of Melissa and whether she acted willfully, the trial court made the following findings of fact:
19. Clear and convincing facts exist which are sufficient to terminate the parental rights of Respondent Mother as follows:
(a) The children were adjudicated neglected and dependent on September 26, 2007.
(b) In July 2007, when the children were removed from the home of Respondent Mother, there was no power or water in the home.
(c) The Court accepted into evidence photos of the home taken in July 2007 as Petitioner's Exhibit 1[.] The Court finds the conditions of the home at that time to be horrendous.
(d) The conditions of the home at that time were not suitable for the children.
(e) The Court finds that the children were residing in an environment which was injurious to their welfare at the time of the adjudication.
(f) Respondent Mother was able to correct the conditions of the home. Respondent Mother provided photos of the home dated August 2007 in Respondent's Exhibit #11 which the Court accepted into evidence. The pictures demonstrate to the Court that Respondent Mother was capable of cleaning the house and correcting at least one of the conditions that led to the removal of the children.
(g) The Court also accepted into evidence photos dated July and August 2008, marked Petitioner's Exhibit #3 and Exhibit #4, which again show the house to be in deplorable condition.
(h) In August 2008, there was no water in the home.
(i) This Court found the conditions of the home to be deplorable in August 2008.
(j) In September 2008, Respondent Mother was evicted from the residence for failure to pay rent.
(k) Since that time and through the date of today's hearing, Respondent Mother has not maintained a stable suitable dwelling.
(l) Respondent Mother has been incarcerated two times since November 2008 and remains incarcerated today.
(m) The probation officer for Respondent Mother testified that Respondent Mother has not maintained a stable residence and he has a hard time finding her despite this being a condition of her probation.
(n) Maintaining a stable residence has been part of the court order and the case plan of Respondent Mother since the children came into the care of DSS.
(o) When the children were removed in July 2007, Respondent Mother was not employed. Her only source of income at that time was the death benefits that her children received from the death of their father.
(p) Obtaining and maintaining employment has been part of the court orders and the case plan of Respondent Mother since the children came into the care of DSS.
(q) Respondent Mother has had a history of short sporadic employments since 2007 but has not maintained any job for more than two months.
(r) Respondent Mother completed her SCAN classes and her psychological evaluation with Dr. Warren. Dr. Warren was not asked to make recommendations for treatment for Respondent Mother.
(s) Dr. Warren diagnosed Respondent Mother with a substance abuse disorder and personality disorder.
(t) Dr. Warren testified that Respondent Mother's history of under-employment/unemployment, multiple relationships and irresponsible births and child-rearing in the absence of even average personal stability contribute to a very poor prognosis for her becoming a good enough parent. Dr. Warren stated that Respondent Mother saw DSS as unnecessarily interfering in her life. The Court accepted into evidence Dr. Warren's summary as Petitioner's Exhibit #2 and incorporates that summary into this Order.
(u) Respondent Mother has a total of six children. Five of those children are in the custody of DSS. The oldest child is over 18 years of age.
(v) In 2008, Respondent Mother was convicted of aiding and abetting and assault with a deadly weapon. Respondent Mother served time in Wilkes County for these crimes. These charges arose from an incident in which Respondent Mother testified that she loaned her car to people she barely knew to help them move and they committed the crimes. The Court finds that Respondent Mother bore no responsibility for her actions despite the fact that she was convicted for the crimes.
(w) After the Court ordered DSS to make extra efforts with Respondent Mother in July 2008, Respondent Mother attended Consumer Counseling classes and resumed "Parenting with Teens" classes. She was, however, then evicted from her home and failed to gain employment.
(x) Since July 2007, the children have never been returned to the care of Respondent Mother.
(y) From the testimony today,
Respondent Mother thinks that she can do it all without the help of anyone and yet, the Court finds that she has no housing, no employment, and no transportation. These are the basic issues that the Court has ordered the Respondent Mother to correct since the children were removed from her care in 2007.
Respondent mother only assigned error to the last of these findings: that respondent mother believes she can do it all without help, but that she has no housing, employment, or transportation, which are the basic issues she had been asked to correct since removal of her children. We note that respondent mother did not specifically carry forward in her brief an argument as to the sufficiency of the record support for this finding. In any event, our review of the record reveals that this finding is supported by clear, cogent, and convincing evidence. These findings of fact are, therefore, binding on appeal. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
In sum, the trial court found that respondent mother has not maintained a stable residence, has had recurring and substantial periods of unemployment, has been incarcerated, has incurred criminal charges for which she took no responsibility, and has been evaluated by a psychologist as having a poor prognosis for becoming an adequate parent. The trial court specifically found that even after it ordered DSS to take extra steps to help respondent mother meet the goals of her case plan, she was unable to meet the major goals of gaining and maintaining stable employment and housing.
Respondent mother points to the trial court's findings that she attended and completed her parenting classes, attended credit counseling classes, and obtained a psychological evaluation as evidence of her reasonable progress. She argues also that she "made efforts on the issues of housing and employment . . . ." As this Court has stressed, however, a finding that grounds existed for termination under N.C. Gen. Stat. § 7B-1111(a)(2) "is not precluded even if the respondent has made some efforts to regain custody of the children." In re Nolen, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995). Thus, even when a parent makes some progress, "[e]xtremely limited progress is not reasonable progress." Id. at 700, 453 S.E.2d at 224-25.
In this case, respondent mother's lack of employment and suitable housing were two of the major reasons that Melissa was removed from her custody. While, at times, respondent mother made some effort in both areas, the trial court's findings of fact that at the time of the hearing, respondent mother had no employment, no housing, and no transportation support its determination that respondent mother failed to make reasonable progress on the critical employment and housing components of her case plan. See In re S.N., X.Z., ___ N.C. App. ___, ___, 669 S.E.2d 55, 60 (2008) (upholding conclusion of no reasonable progress when uncontested findings established that although mother had completed majority of requirements for substance abuse treatment and obtained stable employment, she did not have stable and suitable housing and had not successfully completed parenting classes; court explained that "the fact that respondent made some efforts to correct the situation does not preclude a finding of willfulness"), aff'd per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009); In re Frasher, 147 N.C. App. 513, 515-16, 555 S.E.2d 379, 381-82 (2001) (affirming determination that grounds for termination existed under § 7B1-111(a)(2) when trial court's findings were that respondent mother failed to obtain and maintain stable and appropriate employment and residence despite repeated orders by court to do so).
In light of this holding, we do not address the sufficiency of the findings of fact to support the trial court's conclusion that grounds existed for termination under N.C. Gen. Stat. § 7B1-111(a)(1). See In re P.L.P., 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and `an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.'" (quoting In re Clark, 159 N.C. App. 75, 78 n.3, 582 S.E.2d 657, 659 n.3 (2003))), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).

II
Respondent mother also challenges the trial court's conclusion that termination of her parental rights to Melissa is in the child's best interests. "We review the trial court's decision to terminate parental rights for abuse of discretion." Anderson, 151 N.C. App. at 98, 564 S.E.2d at 602. "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
N.C. Gen. Stat. § 7B-1110(a) (2007) requires that the trial court make findings of fact regarding the following: (1) the age of the child, (2) the likelihood of adoption of the child, (3) whether termination of parental rights will aid in the accomplishment of the permanent plan for the child, (4) the bond between the child and the parent, (5) the quality of the relationship between the child and the proposed adoptive parent, guardian, custodian, or other permanent placement, and (6) any relevant consideration.
The following findings of fact made by the trial court in support of termination are unchallenged by respondent mother on appeal:[3]
26. The Court heard testimony of the social worker, the foster parents and the Guardian ad Litem volunteer and finds as follows:
(a) [Melissa] is two years old.
(b) In July 2007, she was placed with the same foster parents where she remains today.
(c) The only barrier to her adoption is the termination of the parental rights of Respondent Parents.
(d) The child calls the foster parents mom and dad.
(e) The foster parents testified that they are ready, willing and able to provide in all aspects for the child.
(f) The child is too young to understand the meaning of adoption.
(g) Respondent Mother states she is bonded to the child and loves the child as she gave birth to her and breastfed her. However, the child does not remember this and only knows the foster family as her family.
(h) The child's bond is with her foster family.
(i) There is no bond between the child and Respondent Father.
Respondent mother does not dispute that these findings of fact meet the statute's requirements.
Instead, respondent mother argues that DSS had an obligation to help the family and "failed in its mission." She also relies upon her constitutional right to parent. These arguments, however, disregard the fact that the trial court found grounds to terminate respondent mother's parental rights  a decision that we have upheld  thereby rejecting her contention that any lack of progress was due to DSS' failure to adequately assist her. At this stage, respondent mother's previously existing constitutional rights are no longer material; the sole issue is Melissa's best interests. Respondent mother does not explain in what way termination of parental rights fails to be in Melissa's best interests.
We hold that the trial court's findings of fact reflect a thoughtful consideration of the factors in favor and against termination. We cannot say that the trial court's decision that termination was in Melissa's best interests was an abuse of discretion, and we, therefore, affirm.
Affirmed.
Judges McGEE and ROBERT HUNTER, JR. concur.
Report per Rule 30(e).
NOTES
[1] The pseudonym "Melissa" has been used throughout this opinion to protect the privacy of the child and for ease of reading.
[2] DSS filed a separate petition for each of the four youngest children. It explained that it was not filing a petition for the two oldest children because DSS did not have the same immediate concern for those children based on their ages of 15 and 17.
[3] Respondent mother assigned error to subsection (g) of this finding, but her appellate brief contains no argument as to the sufficiency of the evidence with regard to this finding.