NO. COA14-213

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

IN THE MATTER OF:

S.T.B., JR. and O.N.B.

Iredell County
Nos. 12 JT 57, 178

Appeal by respondent from order entered 6 November 2013 by Judge Deborah Brown in Iredell County District Court.  Heard in the Court of Appeals 22 July 2014.

> *Lauren Vaughan for Iredell County Department of Social Services, petitioner-appellee.*
>
> *Melanie Stewart Cranford for Guardian ad Litem, petitioner-appellee.*
>
> *Jeffrey L. Miller for father, respondent-appellant.*

ERVIN, Judge.

Respondent-Father S.B. appeals from an order terminating his parental rights in S.T.B., Jr., and O.N.B.[1]  On appeal, Respondent-Father contends that the trial court lacked jurisdiction over this case given that the termination petition was filed and verified by a person who lacked the authority to take those actions, that the trial court erred by determining that his parental rights in Opal were subject to termination

---

[1]S.T.B., Jr., and O.N.B. will be referred to throughout the remainder of this opinion as "Sam" and "Opal," pseudonyms used for ease of reading and to protect the juveniles' privacy.

pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) on the grounds that Opal had not been in foster care pursuant to an order of the court for twelve months as of the date upon which the termination petition was filed, that the trial court erred by terminating his parental rights in Sam pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) on the grounds that the relevant findings of fact lacked adequate evidentiary support and failed to support the trial court's finding that this ground for termination existed, and that the trial court erred by terminating his parental rights in both children pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) on the grounds that the relevant findings of fact lacked adequate evidentiary support and failed to support the trial court's finding that this ground for termination existed. After careful consideration of Respondent-Father's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

On 23 March 2012, the Iredell County Department of Social Services filed a petition alleging that Sam was a neglected and dependent juvenile based on illegal drug use by Respondent-

Mother Samantha K.,[2] Respondent-Mother's incarceration, and the fact that Sam tested positive for cocaine at birth. DSS took nonsecure custody of Sam contemporaneously with the filing of the initial petition, while Opal was in the care of Respondent-Father's mother at that time. Although DSS alleged that Respondent-Father was Sam's father in the initial petition, Sam's paternity had not been scientifically confirmed or judicially established as of the date upon which the initial petition was filed.

After a hearing held on 2 May 2012, Sam was determined to be a dependent juvenile. Following a dispositional hearing held on 3 July 2012, Respondent-Father was determined to be Sam's father based upon DNA testing results, Sam was retained in DSS custody, and Respondent-Father was ordered to pay child support, submit to random drug testing, and comply with the provisions of his case plan.

On 1 August 2012, DSS filed a petition alleging that Opal was a neglected juvenile. At a hearing held on 28 August 2012, Opal was adjudicated to be a neglected juvenile based upon a stipulation entered into between the parties. At the conclusion of the resulting dispositional proceeding, Opal was placed in

---

[2]As a result of the fact that she did not note an appeal to this Court from the trial court's termination order, Respondent-Mother's parental rights in the children have been finally adjudicated.

DSS custody and Respondent-Father was ordered to comply with the provisions of his case plan, submit to random drug tests, obtain and maintain stable housing and employment, complete parenting classes, maintain regular contact with DSS, refrain from engaging in criminal activity, and pay child support.

On 20 November 2012, a review and permanency planning hearing was held. At the conclusion of that proceeding, DSS was relieved of further responsibility for attempting to reunify Sam and Opal with their parents and the permanent plan for the two children was changed to adoption.

On 21 May 2013, Kathy K. Martin, a program specialist with the Guardian *ad Litem* program, filed and verified a petition seeking to have Respondent-Mother's and Respondent-Father's parental rights in Sam and Opal terminated on the grounds of neglect as authorized by N.C. Gen. Stat. § 7B-1111(a)(1); leaving the children in foster care for more than twelve months without making reasonable progress toward correcting the conditions that led to the children's removal from the home as authorized by N.C. Gen. Stat. § 7B-1111(a)(2); failing to pay a reasonable portion of the cost of the care that the children had received as authorized by N.C. Gen. Stat. § 7B-1111(a)(3); and willfully abandoning the children as authorized by N.C. Gen. Stat. § 7B-1111(a)(7).

After conducting a hearing concerning the issues raised in the termination petition on 24 July 2013, the trial court entered an order on 6 November 2013 finding that Respondent-Father's parental rights in Sam and Opal were subject to termination on the grounds that he had allowed the children to remain in foster care for more than twelve months without making reasonable progress in addressing the conditions that led to their removal from the home pursuant to N. C. Gen. Stat. § 7B-1111(a)(2) and that he had failed to pay a reasonable portion of the cost of the care that had been provided to the children pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) and concluding that the termination of Respondent-Father's parental rights would be in the children's best interest. Respondent-Father noted an appeal to this Court from the trial court's order.

## II. Substantive Legal Analysis

### A. Subject Matter Jurisdiction

In his initial challenge to the trial court's order, Respondent-Father contends that the trial court lacked jurisdiction over the subject matter of this case on the grounds that the petition seeking to have Respondent-Father's parental rights in the children terminated had been filed by a person who had no standing to file or verify such a petition. More specifically, Respondent-Father contends that the trial court

lacked the authority to address the issues raised in the termination petition because it was filed and verified by "Kathy K. Martin, Guardian *ad Litem* ("GAL") Program Specialist, by and through the undersigned Attorney Advocate," rather than by David Hartness, who served as the volunteer guardian *ad litem* appointed to represent the children and who did most of the work performed in connection with the representation of Sam and Opal in this proceeding. We do not find Respondent-Father's argument persuasive.

"Standing is jurisdictional in nature and '[c]onsequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved.'" *In re Miller*, 162 N.C. App. 355, 357, 590 S.E.2d 864, 865 (2004) (quoting *In re Will of Barnes*, 157 N.C. App. 144, 155, 579 S.E.2d 585, 592 (2003), *reversed on other grounds*, 358 N.C. 143, 592 S.E.2d 688 (2004)). According to N.C. Gen. Stat. §§ 7B-1103(a)(6) and 7B-1104, a petition seeking the termination of a parent's parental rights in one or more children may be filed by "[a]ny guardian *ad litem* appointed to represent the minor juvenile pursuant to [N.C. Gen. Stat. §] 7B-601 who has not been relieved of this responsibility" and must "be verified by the petitioner[.]" In view of the fact that the extent of a trial court's jurisdiction over the subject matter

of a particular case raises a question of law, we will review Respondent-Father's challenge to Ms. Martin's standing to file and verify the termination petition using a *de novo* standard of review. *In re E.J.*, __ N.C. App. __, __, 738 S.E.2d 204, 206 (2013).

As N.C. Gen. Stat. § 7B-601(a) reflects, "[t]he guardian *ad litem* and attorney advocate have standing to represent the juvenile in all actions under this Subchapter where they have been appointed" and must be appointed "pursuant to the program established by Article 12 of this Chapter[.]" N.C. Gen. Stat. § 7B-601(a).

> When read *in pari materia*, these statutes [that address guardian *ad litem* appointment, duties, and administration] manifest the legislative intent that representation of a minor child in proceedings under [N.C. Gen. Stat. §] 7B-601 and [N.C. Gen. Stat. §] 7B-1108 is to be . . . by the GAL program established in Article 12 of the Juvenile Code. Under Article 12 volunteer GALs, the program attorney, the program coordinator, and clerical staff constitute the GAL program.

*In re J.H.K.*, 365 N.C. 171, 175, 711 S.E.2d 118, 120 (2011); *see also In re A.N.L.*, 213 N.C. App. 266, 269-70, 714 S.E.2d 189, 192 (2011) (holding that a child "was adequately represented by the [guardian *ad litem* p]rogram pursuant to N.C. Gen. Stat. § 7B-601(a)" despite the absence of the volunteer guardian *ad litem* from the hearing given that the attorney advocate "was

present . . . during both portions of the proceedings" and "actively participated by questioning witnesses and offering recommendations for adjudication and disposition"). As a result, the Supreme Court has rejected an interpretation of the relevant statutory provisions that failed to recognize the fact that the participants in the guardian *ad litem* program function as a team instead of a collection of individuals, *J.H.K.*, 365 N.C. at 177, 711 S.E.2d at 121, noting that the General Assembly did not specify duties to be performed by each specific member of the team. *Id.* at 176, 711 S.E.2d at 121. The argument that Respondent-Father has advanced in support of his challenge to the trial court's jurisdiction over the subject matter of this case, which lacks support in any specific prior decision of either the Supreme Court or this Court and which interprets N.C. Gen. Stat. § 7B-1103(a)(6) to mean that the only member of the guardian *ad litem* team authorized to file and verify a termination petition is the volunteer guardian *ad litem*, is directly contrary to the interpretive approach adopted in *J.H.K.* As a result, given that the General Assembly intended for Sam and Opal to be represented by the guardian *ad litem* program and for the participants in that program to function as a team, we conclude that the termination petition at issue in this case was

properly filed and verified and that Respondent-Father's argument to the contrary lacks merit.

## B. Grounds for Termination

Secondly, Respondent-Father argues that the trial court erred by concluding that his parental rights in Sam and Opal were subject to termination on the grounds that he failed to pay a reasonable portion of the cost of the care that Sam and Opal received while in foster care as authorized by N.C. Gen. Stat. § 7B-1111(a)(3). More specifically, Respondent-Father argues that the trial court erred by determining that his parental rights in Sam and Opal were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) on the grounds that the trial court did not find, and the record evidence did not show, that he had willfully failed to pay a reasonable portion of the cost of the care that Sam and Opal received during the six month period immediately preceding the filing of the termination petition despite having the ability to do so. Respondent-Father's argument lacks merit.

A parent's parental rights in a child are subject to termination in the event that

> [t]he juvenile has been placed in the custody of a county department of social services, . . . or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for

> such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3). "The word 'willful' means something more than an intention to do a thing. It implies doing the act *purposely* and *deliberately*. Manifestly, one does not act willfully in failing to make support payments if it has not been within his power to do so." *In re Adoption of Maynor*, 38 N.C. App. 724, 726, 248 S.E.2d 875, 877 (1978) (emphasis in original) (citations omitted). "A parent's ability to pay is the controlling characteristic of what is a 'reasonable portion' of cost of foster care for the child which the parent must pay." *In re Clark*, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981). "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." *Id.* "[N]onpayment would constitute a failure to pay a 'reasonable portion' if and only if respondent were able to pay some amount greater than zero." *In re Bradley*, 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982). In evaluating the validity of Respondent-Father's contention that the trial court erred by determining that his parental rights in Sam and Opal were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(3), we must examine "whether the findings of fact are supported by clear, cogent and

convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

In its termination order, the trial court determined that Respondent-Father, "for a continuous period of six months next preceding the filing of the TPR petition, ha[d] willfully failed for such period to pay a reasonable portion of the cost of care for the juveniles, although physically and financially able to do so[.]" In support of this conclusion, the trial court found as fact that:

> 53. Since the juveniles have been in the custody of the Department, the Respondent Father has never brought any gifts for the juveniles, has never paid any child support for the benefit of the juveniles, and has not sent any cards or letters to the juveniles.
>
> . . . .
>
> 55. The Respondent Mother is under a child support order which orders her to pay $50 per month for the benefit of each of the juveniles. The Respondent Father is also under a child support order which orders him to pay $50 per month for the benefit of each of the juveniles. Neither parent has paid any amount towards their respective child support obligations, and the Court is unaware of any disability which would prevent the parents from paying some amount toward these obligations.

As a result of the fact that Respondent-Father has refrained from challenging either of these findings as lacking in sufficient evidentiary support, they are deemed to be supported by competent evidence and are binding on appeal. *In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009).

Although Respondent-Father contends in his brief that the evidence contained in the record developed at the termination hearing and the trial court's findings of fact did not suffice to adequately establish that he had the ability to pay any portion of the cost of Sam's and Opal's care during the relevant six month period and points to findings in prior orders concerning his continued unemployment and his failure to make certain payments required under a probationary judgment, this argument overlooks the fact that the issue of his ability to pay is addressed and resolved by the fact that he was subject to a child support order that required him to pay $50 per month for the benefit of his children. As this Court has previously stated, given that "a proper decree for child support will be based on the supporting parent's ability to pay as well as the child's needs, there is no requirement that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period." *In re Roberson*, 97 N.C. App. 277, 281,

387 S.E.2d 668, 670 (1990) (citations omitted).  In addition to finding that Respondent-Father was subject to a child support order that required him to pay $50 per month for the benefit of the children, the trial court also found that it was not aware that Respondent-Father was subject to any disability that would prevent him from paying some amount of support.  As a result, given that record evidence and the trial court's findings establish that Respondent-Father had the ability to pay some amount greater than zero for the support of the children, the trial court did not err by determining that Respondent-Father's parental rights in Sam and Opal were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).[3]

## III. Conclusion

Thus, none of Respondent-Father's arguments adequately support his request that the trial court's termination order be overturned.  As a result, the trial court's order should be, and hereby is, affirmed.

---

[3]Although Respondent-Father also argues that the trial court erred by concluding that his parental rights in Sam and Opal were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not address this aspect of his challenge to the trial court's termination order given our decision to uphold the trial court's decision that Respondent-Father's parental rights in Sam and Opal were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).  *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (holding that a finding that one ground for the termination of a parent's parental rights exists is sufficient to support a termination order).

AFFIRMED.

Judges McGEE and STEELMAN concur.