IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-144

 No. 511A20

 Filed 5 November 2021

 IN THE MATTER OF: S.C.C.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered 20 August

 2020 by Judge Jeanie R. Houston in District Court, Yadkin County. This matter was

 calendared in the Supreme Court on 30 September 2021, but was determined on the

 record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina

 Rules of Appellate Procedure.

 James N. Freeman, Jr., for petitioner-appellee Yadkin County Human Services
 Agency.

 Paul W. Freeman, Jr., for appellee Guardian ad Litem.

 Benjamin J. Kull for respondent-appellant mother.

 Garron T. Michael for respondent-appellant father.

 ERVIN, Justice.

¶1 Respondent-mother Eden K. and respondent-father Lovell C. appeal from the

 trial court’s order terminating their parental rights in their daughter, S.C.C.1 After

 careful consideration of the parents’ challenges to the trial court’s termination order,

 we conclude that it should be affirmed.

 1 S.C.C. will be referred to throughout the remainder of this opinion as “Sandra,”

 which is a pseudonym used for ease of reading and to protect the identity of the juvenile.
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

¶2 Sandra was born in September 2015. On 9 February 2018, the Yadkin County

 Human Services Agency received a child protective services report alleging that

 Sandra was being neglected and that there were concerns about the presence of

 domestic violence and substance abuse in the home. On 12 February 2018, a social

 worker, accompanied by an officer of the Jonesville Police Department, went to

 respondent-mother’s home for the purpose of investigating the allegations. At the

 time, Sandra lived with respondent-mother, her maternal grandmother, and her

 maternal great-grandparents.

¶3 As they were being interviewed by the social worker, the adults yelled at one

 another until the law enforcement officer who was in attendance managed to separate

 them. The adults told the social worker that they frequently argued among

 themselves. In addition, the social worker learned that, on 5 February 2018, a law

 enforcement officer had responded to a report concerning a domestic disturbance that

 had occurred at the residence.

¶4 On 11 February 2018, the maternal grandmother was arrested for possession

 of cocaine and released on bond on the same day. According to statements that

 respondent-mother made to a social worker, the maternal grandmother used

 impairing substances that had not been prescribed for her. Respondent-mother also

 had a history of substance abuse that included the use of heroin and other opiates.

 As a result of the fact that Sandra had been addicted to opiates at the time of her
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 birth, the child had not lived with respondent-mother for one year while respondent-

 mother underwent substance abuse treatment. Although respondent-mother had

 returned to the home five to six months before her interview with the social worker,

 respondent-mother admitted that she had relapsed and that, in the event that she

 was tested for the presence of controlled substances, the results would be positive for

 marijuana. In addition, Sandra’s maternal great-grandfather reported that

 respondent-mother would leave Sandra with the maternal grandmother for weeks at

 a time and had only returned from such an absence two days before speaking with

 the social worker.

¶5 After determining that it was not safe for Sandra to continue residing in the

 home, the social worker transported Sandra and respondent-mother to the YCHSA

 office. In an attempt to make arrangements for Sandra’s care, respondent-mother

 contacted respondent-father, who came to the YCHSA office. At that time,

 respondent-father informed agency employees that he did not know what took place

 in respondent-mother’s home in spite of the fact that he had been contacted in the

 course of earlier child protective services assessments and that he had not ever served

 as Sandra’s primary caretaker. While performing a background check concerning

 respondent-father, YCHSA discovered that there was an outstanding warrant for his

 arrest. As a result, respondent-father was taken into custody by law enforcement

 officers.
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

¶6 On 13 February 2018, YCHSA filed a juvenile petition alleging that Sandra

 was a neglected juvenile, obtained the entry of an order taking Sandra into non-

 secure custody, and placed Sandra in a licensed foster home. After a hearing held on

 29 March 2018, the trial court entered an adjudication and disposition order on 23

 April 2018 in which it determined that Sandra was a neglected juvenile, placed

 Sandra in YCHSA custody, awarded placement authority to YCHSA, and noted that

 both parents had entered into an Out of Home Family Services Agreement that had

 been developed for the purpose of remedying the problems that had led to Sandra’s

 removal from the family home. The case plans adopted for the parents required each

 of them to complete a substance abuse assessment, submit to random drug screens,

 complete a psychological assessment and a parenting education program, maintain

 consistent employment, and obtain appropriate housing.

¶7 In an order that was entered on 13 July 2018 following a review hearing held

 on 14 June 2018, Judge David V. Byrd found that both parents had tested negative

 for the presence of controlled substances, completed a psychological assessment, and

 procured housing. In addition, respondent-father had obtained employment. On the

 other hand, the parents were “inconsistent” in their visits with Sandra, consistently

 claiming that their multiple cancelled visits stemmed from a “lack of transportation.”

¶8 After a hearing held on 3 January 2019, Judge William F. Brooks entered a

 permanency planning order on 6 February 2019 in which he found that neither parent
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 had visited Sandra since August 2018, with the parents having attributed their

 failure to visit with Sandra to a lack of transportation and conflicting work schedules.

 In addition, the parents had failed to send Sandra any “letters, cards, gifts, or other

 tokens of love and affection during that same time period.” Although Judge Brooks

 found that there was “very little bond, if any, between the [respondent-]parents and

 [Sandra,]” he concluded that reunification efforts would not “clearly” be unsuccessful

 and established a primary permanent plan of reunification coupled with a secondary

 plan of guardianship.

¶9 In a permanency planning order that was entered on 24 May 2019 following a

 hearing held on 26 April 2019, Judge Byrd found that the parents had resumed their

 visits with Sandra in January 2019. On the other hand, Judge Byrd found that, even

 though both parents were subject to child support orders and had been employed for

 the past year, respondent-mother had failed to pay any child support. In addition,

 Judge Byrd described the progress being made by both parents as “slow and delayed.”

 Although the primary permanent plan for Sandra remained one of reunification,

 Judge Byrd changed the secondary plan to one of adoption.

¶ 10 After a hearing held on 29 August 2019, Judge Brooks entered a third

 permanency planning order on 1 October 2019 in which he found that, even though

 both parents had obtained a psychological assessment, the assessors had been unable

 to properly evaluate the parents in light of their “defensive” or “guarded” statements.
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

For that reason, Judge Brooks required the parents to submit to new psychological

assessments. In addition, Judge Brooks found that, even though respondent-mother

had been subject to a child support order that required her to pay $110 each month,

plus an additional $20 monthly payment that was to be applied to an existing

arrearage, since 11 November 2018 and respondent-father had been subject to a child

support order that required him to pay $451 each month, plus an additional $59

monthly amount that was to be applied to an existing arrearage, since 1 June 2018,

each parent had, “at most,” made a single payment. As a result, Judge Brooks

concluded that the parents “ha[d] made just enough progress during the life of this

case to justify continuing to work towards reunification,” ordered the parents to

provide updated psychological assessments, changed the primary plan to one of

adoption and the secondary plan to one of reunification, and ordered YCHSA to file a

petition for the purpose of terminating the parents’ parental rights in Sandra. On 20

November 2019, YCHSA filed a motion seeking the termination of the parents’

parental rights in Sandra in which it alleged that the parents’ parental rights were

subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); willful failure

to make reasonable progress toward correcting the conditions that had led to Sandra’s

removal from the family home, N.C.G.S. § 7B-1111(a)(2); and willfully failing to pay

a reasonable portion of the cost of the care that Sandra had received after being taken

into YCHSA custody, N.C.G.S. § 7B-1111(a)(3).
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

¶ 11 After a hearing held on 27 February 2020, the trial court entered an order on

 31 March 2020 in which it concluded that continued efforts to reunite Sandra with

 either parent within a reasonable period of time would be unsuccessful and

 inconsistent with Sandra’s health, safety, and need for a safe, permanent home. In

 addition, the trial court determined that continued visits between Sandra and the

 parents would be contrary to Sandra’s best interests. After ordering that Sandra’s

 primary permanent plan remain one of adoption, the trial court changed Sandra’s

 secondary permanent plan to one of guardianship.

¶ 12 In the aftermath of a hearing held on 30 June 2020, the trial court entered a

 permanency planning order on 20 August 2020 in which it found that both parents

 were employed, that neither of them was disabled, and that neither of them had

 sought to have their existing child support obligation modified. In addition, the trial

 court found that respondent-father had never made a child support payment and that

 respondent-mother had never made a voluntary child support payment. After

 determining that both parents had failed to make reasonable progress toward

 satisfying the requirements of their case plans in the twenty-eight months since

 Sandra entered YCHSA custody, that there was no reasonable likelihood that the

 family could be reunited within a reasonable period of time, that the child’s foster

 parent intended to adopt Sandra once the child became legally eligible for adoption,

 and that there were no concerns relating to Sandra’s current placement given the
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 existence of a strong bond between Sandra and her foster parent, the trial court

 relieved YCHSA from any further obligation to continue to reunify Sandra with either

 of her parents.

¶ 13 The YCHSA termination motion also came on for hearing before the trial court

 at the 30 June 2020 session of the District Court, Yadkin County. On 20 August

 2020, the trial court entered an order in which it found, by clear, cogent, and

 convincing evidence, that the parents’ parental rights in Sandra were subject to

 termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); willful failure to make

 reasonable progress toward correcting the conditions that had led to Sandra’s

 removal from the family home, N.C.G.S. § 7B-1111(a)(2); and willful failure to pay a

 reasonable portion of the cost of the care that Sandra had received while in YCHSA

 custody, N.C.G.S. § 7B-1111(a)(3), and determined that the termination of the

 parents’ parental rights would be in Sandra’s best interests. As a result, the trial

 court terminated the parents’ parental rights in Sandra. Both parents noted appeals

 to this Court from the trial court’s termination order.

¶ 14 The relevant provisions of the North Carolina General Statutes establish a

 two-step process for the holding of a termination of parental rights proceeding

 consisting of an adjudicatory stage followed by a dispositional stage. At the

 adjudicatory stage, the trial court must determine whether any of the grounds for

 termination delineated in N.C.G.S. § 7B-1111(a) have been shown to exist on the basis
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 of clear, cogent, and convincing evidence. N.C.G.S. § 7B-1109(e)–(f) (2019). This

 Court “reviews a trial court’s adjudication under N.C.G.S. § 7B-1109 ‘to determine

 whether the findings are supported by clear, cogent and convincing evidence and the

 findings support the conclusions of law.’ ” In re C.B.C., 373 N.C. 16, 19 (2019)

 (quoting In re Montgomery, 311 N.C. 101, 111 (1984)). The existence of a single

 ground for termination is sufficient to support a trial court’s adjudication decision.

 See N.C.G.S. § 7B-1111(a); In re Moore, 306 N.C. 394, 404 (1982) (stating that, “[i]f

 either of the three grounds aforesaid is supported by findings of fact based on clear,

 cogent and convincing evidence, the order appealed from should be affirmed”). As a

 result, we will begin our analysis of the parents’ challenge to the trial court’s

 termination order by determining whether the trial court properly found that the

 parents’ parental rights in Sandra were subject to termination pursuant to N.C.G.S.

 § 7B-1111(a)(3).

¶ 15 A trial court may terminate the parental rights of a parent in the event that:

 [t]he juvenile has been placed in the custody of a county
 department of social services . . . or a foster home, and the
 parent has for a continuous period of six months
 immediately preceding the filing of the petition or motion
 willfully failed to pay a reasonable portion of the cost of
 care for the juvenile although physically and financially
 able to do so.

 N.C.G.S. § 7B-1111(a)(3) (2019). As we have previously stated:

 The cost of care refers to the amount it costs the
 Department of Social Services to care for the child, namely,
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 foster care. A parent is required to pay that portion of the
 cost of foster care for the child that is fair, just and
 equitable based upon the parent’s ability or means to pay.

 In re J.M., 373 N.C. 352, 357 (2020) (cleaned up). According to respondent-parents,

 the trial court erred by determining that they had “willfully failed to pay a reasonable

 portion of the cost of care for the minor child although they [we]re physically and

 financially able to do so.”2 We disagree.

¶ 16 In its termination order, the trial court found as a fact that:

 19. A child support obligation in regard to
 [Sandra] was established with [respondent-father] on May
 13th, 2019. [Respondent-father] has been employed . . . for
 the life of the obligation. He made approximately $7,000
 in the first quarter of 2019, $8,000 in the second quarter,
 $5,000 in the third quarter, $6,200 in the fourth quarter
 and $8,000 in the first quarter of 2020. Pursuant to the NC
 child support guidelines his established obligation is
 $451.00 monthly. He is not disabled, has never been
 approved for any form of disability benefits and has never
 attempted to motion the Court to modify his obligation in
 any way. [Respondent-father] did not make a single
 payment towards [Sandra]’s child support in the 6 months
 preceding the filing of the TPR before the Court.
 [Respondent-father] has never made a single child support
 payment at all. His current arrearage is $12,907 and there
 is an outstanding order for his arrest based on child
 support contempt.

 20. A child support obligation in regard to
 [Sandra] was established with [respondent-mother] on
 October 22nd, 2018. [Respondent-mother] is employed, is

 2 Respondent-father has adopted the argument set forth in respondent-mother’s brief

 with respect to the issue of whether his parental rights in Sandra were subject to termination
 pursuant to N.C.G.S. § 7B-1111(a)(3).
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 not disabled and has never been approved for any form of
 disability benefits. Pursuant to the NC child support
 guidelines her established obligation is $110.00 per month
 plus $20.00 monthly to be applied to her arrearage.
 [Respondent-mother] has never motioned the Court or
 attempted to modify her child support obligation in any
 way. [Respondent-mother] did not make a single payment
 of any kind towards [Sandra]’s child support in the 6
 months preceding the filing of this TPR. In fact, she has
 never made a voluntary payment at all.

 21. The Court finds that both [respondent-father]
 and [respondent-mother] have for a continuous period of
 more than 6 months immediately preceding the filing of
 this Motion for Termination of Parental Rights, failed to
 pay a reasonable portion of [Sandra]’s cost of care despite
 having been physically and financially capable of doing so.

 Neither respondent-mother nor respondent-father has challenged the sufficiency of

 the evidentiary support for these findings of fact. See In re T.N.H., 372 N.C. 403, 407

 (2019) (stating that unchallenged findings of fact are deemed to be supported by

 competent evidence and are binding for purposes of appellate review).

¶ 17 In attempting to persuade us that the trial court erred by concluding that their

 parental rights in Sandra were subject to termination pursuant to N.C.G.S. § 7B-

 1111(a)(3), the parents focus their attention upon this Court’s decision in In re J.M.,

 373 N.C. at 352 (2020), which addressed a parent’s challenge to the trial court’s

 finding that she had the ability to work in the period of time preceding the filing of

 the termination motion. In re J.M., 373 N.C. at 358. In that case, after observing

 that the parent was subject to a valid child support order that had established her
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 ability to financially support her children, we affirmed the trial court’s determination

 that the parent’s parental rights were subject to termination pursuant to N.C.G.S. §

 7B-1111(a)(3) on the grounds that, since “[a] proper decree for child support will be

 based on the supporting parent’s ability to pay as well as the child’s needs, there is

 no requirement that petitioner independently prove or that the termination order

 find as fact respondent’s ability to pay support during the relevant statutory time

 period.” Id. at 359 (quoting In re S.T.B., 235 N.C. App. 290, 296 (2014)).

¶ 18 According to the parents, the principle adopted in In re J.M. to the effect that

 a valid child support order is sufficient, without more, to establish a parent’s ability

 to pay support involves the erroneous use of a “simplified analysis under N.C.G.S.

 § 7B-1111(a)(3)” and should be abandoned on the theory that “a trial court must

 consider and make findings about—at a minimum—the income, assets, and

 legitimate reasonable needs and expenses of the parent, regardless of whether the

 parent has a child support order.” We are not persuaded by the parents’ argument.

¶ 19 As this Court has previously held, “[a] finding that a parent has ability to pay

 support is essential to termination for nonsupport . . . .” In re Ballard, 311 N.C. 708,

 716–17 (1984) (citing In re Clark, 303 N.C. 592 (1981)). According to well-established

 North Carolina law, a valid child support order must rest upon an analysis of “(1) the

 amount of support necessary to meet the reasonable needs of the child and (2) the

 relative ability of the parties to provide that amount.” Coble v. Coble, 300 N.C. 708,
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 712 (1980) (cleaned up). In determining whether a parent’s parental rights in a child

 are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) in the context of a

 situation in which the parent is subject to a valid child support order, “there is no

 requirement that petitioner independently prove or that the termination order find

 as fact respondent’s ability to pay support during the relevant statutory time period.”

 In re J.M., 373 N.C. at 359 (quoting In re S.T.B., 235 N.C. App. at 296). Thus, this

 Court has directly and explicitly rejected the argument that the parents have

 advanced in opposition to the trial court’s determination that their parental rights in

 Sandra were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3).

¶ 20 The need for consistency with the principle of stare decisis causes us to reject

 the parents’ challenge to the trial court’s determination that their parental rights in

 Sandra were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and their

 concomitant argument that In re J.M. should be overruled. As this Court has clearly

 stated:

 [i]t is . . . an established rule to abide by former precedents,
 stare decisis, where the same points come up again in
 litigation, as well to keep the scale of justice even and
 steady, and not liable to waver with every new judge’s
 opinion, as also because, the law in that case being
 solemnly declared and determined what before was
 uncertain, and perhaps indifferent, is now become a
 permanent rule, which it is not in the breast of any
 subsequent judge to alter or swerve from according to his
 private sentiments; he being sworn to determine, not
 according to his private judgment, but according to the
 known laws and customs of the land—not delegated to
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 pronounce a new law, but to maintain and expound the old
 one—jus dicere et non jus dare.

 McGill v. Town of Lumberton, 218 N.C. 586, 591 (1940) (cleaned up); see also Bacon

 v. Lee, 353 N.C. 696, 712 (2001) (stating that “[a] primary goal of adjudicatory

 proceedings is the uniform application of law” and that, “[i]n furtherance of this

 objective, courts generally consider themselves bound by prior precedent, i.e., the

 doctrine of stare decisis” (citing Payne v. Tennessee, 501 U.S. 808, 827 (1991) (stating

 that “[s]tare decisis is the preferred course because it promotes the evenhanded,

 predictable, and consistent development of legal principles, fosters reliance on

 judicial decisions, and contributes to the actual and perceived integrity of the judicial

 process”). As a result, in light of the critical function played by the doctrine of stare

 decisis in our legal system we adhere to our prior decision in In re J.M. and decline

 the parents’ invitation to revisit the issue that was decided in that case.

¶ 21 A careful analysis of the trial court’s unchallenged findings of fact shows the

 existence of ample support for its conclusion that the parents had willfully failed to

 pay a reasonable portion of the cost of care for Sandra despite having the physical

 and financial ability to do so. See In re J.A.E.W., 375 N.C. 112, 117–18 (2020)

 (affirming a determination that a parent’s parental rights in a child were subject to

 termination pursuant to N.C.G.S. § 7B-1111(a)(3) based upon the fact that, even

 though the parent had income during the relevant period, no contribution at all was

 made toward the payment of the child’s expenses and stating that the parents’ “living
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 expenses might be relevant evidence to be taken into account if he had made some

 child support payments during the applicable time period and the issue was whether

 the amount he contributed to the cost of [the minor child]’s care was reasonable”). As

 a result, the trial court did not err by determining that the parents’ parental rights

 in Sandra were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3). In view

 of our determination that the trial court did not err by concluding that the ground for

 termination established by N.C.G.S. 7B-1111(a)(3) existed in this case, In re E.H.P.,

 372 N.C. 388, 395 (2019), we need not address the parents’ challenge to the trial

 court’s conclusion that their parental rights in Sandra were also subject to

 termination for neglect pursuant to N.C.G.S. § 7B-1111(a)(1) and willful failure to

 make reasonable progress toward correcting the conditions that had led to Sandra’s

 removal from the family home pursuant to N.C.G.S. § 7B-1111(a)(2).

¶ 22 In the event that the trial court finds the existence of one or more of the

 grounds for termination delineated in N.C.G.S. § 7B-1111(a), it is required to proceed

 to the dispositional stage, at which it “shall determine whether terminating the

 parent’s rights is in the juvenile’s best interest.” N.C.G.S. § 7B-1110(a) (2019). In

 making its dispositional decision,

 [t]he court may consider any evidence, including hearsay
 evidence as defined in G.S. 8C-1, Rule 801, that the court
 finds to be relevant, reliable, and necessary to determine
 the best interests of the juvenile. In each case, the court
 shall consider the following criteria and make written
 findings regarding the following that are relevant:
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will aid
 in the accomplishment of the permanent plan for the
 juvenile.

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the juvenile
 and the proposed adoptive parent, guardian, custodian, or
 other permanent placement.

 (6) Any relevant consideration.

 N.C.G.S. § 7B-1110(a) (2019). We review the trial court’s dispositional findings of

 fact to determine whether they are supported by the evidence received during the

 termination hearing, see In re J.J.B., 374 N.C. 787, 793 (2020), with a reviewing court

 being “bound by all uncontested dispositional findings.” In re E.F., 375 N.C. 88, 91

 (2020) (citing In re Z.L.W., 372 N.C. 432, 437 (2019)). The trial court’s dispositional

 decision is evaluated on appeal using an abuse of discretion standard of appellate

 review. In re A.U.D., 373 N.C. 3, 6 (2019). “Under this standard, we defer to the trial

 court’s decision unless it is ‘manifestly unsupported by reason or one so arbitrary that

 it could not have been the result of a reasoned decision.’ ” J.J.B., 374 N.C. at 791

 (quoting In re Z.A.M., 374 N.C. 88, 100 (2020)).

¶ 23 In the dispositional portion of its termination order, the trial court found that

 Sandra had not experienced emotional or developmental delays and did not have any
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

ongoing medical problems; that the foster home in which Sandra resided was safe

and appropriate; that Sandra’s foster parent would adopt her as soon as it was legally

possible for the foster parent to do so; that it had no concerns about the

appropriateness of Sandra’s current placement; that Sandra’s foster parent was

gainfully employed, did not suffer from any physical or mental disability or other

similar limitation and had the ability to provide for Sandra’s financial, mental, and

physical health needs; that Sandra and her foster parent were “strongly bonded”; that

terminating the parents’ parental rights in Sandra was the only remaining barrier to

implementing the permanent plan of adoption; and that “[t]here [wa]s no reasonable

probability that the family unit c[ould] be reunited within a reasonable or foreseeable

period of time.” As part of this process, the trial court made the following

unchallenged findings of fact relating to the dispositional criteria enumerated in

N.C.G.S. § 7B-1110(a):

 a. The minor child is only four years old and she has been
 in foster care for approximately 28 months.

 b. There is a very high likelihood that [Sandra] will be
 adopted by her current foster parent.

 c. Termination of the parents’ parental rights will aid in
 the accomplishment of the permanent plan for the
 juvenile.

 d. There is no bond between the minor child and her
 biological parents.
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 e. There is a strong and loving bond between [Sandra] and
 her foster mother.

 f. The minor child is deserving of a stable home free from
 domestic violence, substance abuse, and strife where
 her needs will be attended to until she reaches
 adulthood. She is further deserving of permanency and
 an opportunity to flourish and excel. Terminating her
 parents’ parental rights will further these objectives.

¶ 24 In urging us to overturn the trial court’s dispositional decision, the parents

 argue that the trial court’s finding that Sandra has “no reasonable probability” of

 being reunified with respondents “within a reasonable or foreseeable period of time”

 lacks sufficient evidentiary support. According to the parents, the only barrier

 precluding their reunification with Sandra consisted of their poverty, which deprived

 them of the ability to afford the services that were required by their case plans. We

 do not find this argument persuasive.

¶ 25 A review of the trial court’s unchallenged findings of fact reveals that Sandra

 was placed in foster care on 13 February 2018 and that she had been in foster care

 for 28 months at the time of the termination hearing. Although the parents were

 allowed to have supervised visits with Sandra twice each month, neither of them took

 advantage of their opportunity for a visit with Sandra during the period between

 August 2018 and January 2019. In addition, the record reflects that the aspects of

 their case plans that the parents failed to complete, including mental health

 evaluations and random drug screens, were initially made available to them by
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 YCHSA; that, even though each parent participated in a psychological assessment,

 the results of that process were inconclusive given their “defensive” or “guarded”

 responses; and that YCHSA provided drug screens to the parents until they indicated

 that they could not participate in the drug screening process in light of the

 transportation-related difficulties that they were experiencing. Although the

 parents’ residence was found to be appropriate for a child, the trial court found that,

 “at no point in time since the minor child came into care, has the visitation plan been

 expanded to include unsupervised/overnight visitation or a trial home placement,”

 with visitation between the parents and Sandra having been ended on 27 February

 2020. As a result, we hold that the trial court’s unchallenged findings support its

 determination that, as of the date of the termination hearing, there was no reasonable

 probability that the parents could be reunited with Sandra within a reasonable period

 of time. See In re R.D., 376 N.C. 244, 258 (2020) (stating that, “[i]n making findings

 of fact, ‘it is the trial judge’s duty to consider all the evidence, pass upon the credibility

 of the witnesses, and determine the reasonable inferences to be drawn from the

 testimony’ ” (quoting In re T.N.H., 372 N.C. 403, 411 (2019))).

¶ 26 In addition, the parents argue that the trial court’s finding that they had “no

 bond” with Sandra was devoid of record support. However, a social worker testified

 that, as of the date of the termination hearing, “there is not a strong bond between

 [Sandra] and the parents as visitation ha[d] been ceased since February 27th, 2020.”
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

 In addition, the guardian ad litem’s report, which was admitted into evidence at the

 dispositional hearing, stated that:

  Although there was no bond observed between [Sandra]
 and her parents who did not visit her at all for the first
 6 months she was in YCHSA custody, they began
 visiting in January 2019.

  At first [Sandra] was afraid of [her parents]. She
 resisted going to visits and had nightmares about “the
 man coming to get her.”

  With time, [Sandra] became more comfortable and GAL
 observed she was willing to play with her parents in the
 YCHSA meeting room, however, GAL never observed
 [Sandra] act with affection toward them. She was
 observed to be willing to play with them, but resistant
 to hugs. She was always anxious to go “home.”

  More recently, [Sandra] became so anxious about
 visiting her parents that it affected her behaviors both
 at home and school. Visits were stopped on her
 therapist’s advice.

 As a result, we hold that the record contains ample evidentiary support for the trial

 court’s finding that there was no bond between Sandra and her parents. In re R.D.,

 376 N.C. at 258 (stating that “findings of fact are binding ‘where there is some

 evidence to support those findings, even though the evidence might sustain findings

 to the contrary’ ” (quoting In re Montgomery, 311 N.C. 101, 110–11 (1984))).

¶ 27 Thus, we hold that the trial court’s dispositional findings adequately address

 the dispositional criteria enumerated in N.C.G.S. § 7B-1110(a) and demonstrate that

 the trial court, having made a reasonable dispositional decision, did not abuse its
 IN RE S.C.C.

 2021-NCSC-144

 Opinion of the Court

discretion in determining that the termination of the parents’ parental rights would

be in Sandra’s best interests. As a result, given that the trial court did not commit

any error of law in determining that the parents’ parental rights in Sandra were

subject to termination pursuant to N.C.G.S. § 7B-1111(a)(3) and did not abuse its

discretion in determining that the termination of the parents’ parental rights would

be in Sandra’s best interests, the trial court’s termination order is affirmed with

respect to both parents.

 AFFIRMED.